2017 UT App 68

## THE UTAH COURT OF APPEALS

CONOCOPHILLIPS COMPANY AND PIONEER PIPE LINE COMPANY,
Appellees,
*v.*
UTAH DEPARTMENT OF TRANSPORTATION AND AMES
CONSTRUCTION INC.,
Appellants.

Opinion
No. 20160221-CA
Filed April 20, 2017

Second District Court, Farmington Department
The Honorable Thomas L. Kay
No. 120700141

Miles M. Dewhirst, Rick N. Haderlie, and Kyle L.
Shoop, Attorneys for Appellants

Robert E. Mansfield and Steven J. Joffee, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN, Judge:

¶1     The appellants seek to set aside the district court's
judgment against them. They contend that, during the jury trial,
the court erred (1) by ruling that portions of a deponent's
testimony did not qualify as admissible expert testimony
pursuant to Utah Rule of Evidence 702 and (2) by failing to strike
portions of a percipient witness's testimony that amounted to an
unsolicited expert opinion. We conclude that the district court
properly excluded the relevant portions of the deposition and
that any error in failing to strike the trial testimony was invited;

consequently, we affirm. We remand to the district court for the limited purpose of calculating attorney fees incurred on appeal.

## BACKGROUND

¶2 The Utah Department of Transportation (UDOT) hired Ames Construction Inc. (collectively, Defendants) as the general contractor for a highway construction project. Completion of the project required the relocation of several utilities, including a pipeline owned by ConocoPhillips Company (Conoco). UDOT therefore entered into written agreements with Conoco under which Conoco agreed to relocate the relevant section of pipeline and UDOT agreed to reimburse Conoco for the costs of doing so. The pipeline relocation was completed in March 2007; the pipeline was inspected before, during, and after the relocation to ensure that it was not damaged. Portions of the new pipeline run parallel to and under the new highway, approximately 28 feet underground.

¶3 After the relocation was completed, Defendants installed wick drains in the ground around the highway project. Wick drains are used to remove excess moisture from the ground in construction areas. They are essentially "pipes" driven into the ground that allow groundwater to seep through semi-permeable sides and collect inside the drain for removal or evaporation. During the highway project, Defendants used hundreds of wick drains driven up to 100 feet underground.

¶4 On April 3, 2007, one of Conoco's supervisors noticed that 27 to 30 wick drains had been installed within 7 or 8 feet of the surface markers indicating the pipeline's underground location.[1]

---

1. In their written agreements, UDOT and Conoco had agreed that a Conoco-appointed inspector would be "required to be onsite during all phases of work impacting the pipeline," including "any time work is being done within 25 [feet] of the

(continued…)

At least one of the wick drains was within 4 feet of the pipeline markings. The supervisor halted all work in the area to investigate whether the wick-drain installation had damaged the pipeline or the pipeline's cathodic anti-corrosion coating. *See generally* 49 C.F.R. §§ 195.563, 195.571 (2017) (federal regulations requiring cathodic protection of certain types of underground pipelines).

¶5      As part of the investigation, Conoco hired Brent Cathey to conduct a direct-current-voltage-gradient (DCVG) test. DCVG testing indirectly detects "holidays[2] or voids in a pipeline's coating" by measuring voltage gradients in the soil. Cathey did not detect any holiday indications at the site.

¶6      Several years later, in 2010, the pipeline was physically inspected, and damage to its upper portion was found in two areas. The first was a 0.6-inch-deep dent at the "12:15 position." The second was a 1.05-inch-deep dent "located at the 11:00 position." The GPS coordinates of the damaged areas were "in very close proximity" to where two of the wick drains had been installed in April 2007.

¶7      Conoco filed this lawsuit against Defendants, alleging breach of contract and negligence. During the three-day jury trial, Conoco presented evidence suggesting that the wick-drain installation caused the dents on the pipeline. Defendants presented contrary evidence including Cathey's deposition.[3] The

---

(…continued)
pipeline." However, it is undisputed that no Conoco inspector was present during the wick-drain installations.

2. A holiday is a discontinuity, defect, or hole in the anti-corrosion coating on a pipe. An untreated holiday may result in the pipeline corroding and leaking its contents.

3. Cathey was not available to testify at trial.

parties agree that Cathey's deposition contained eight statements relevant here:

> (1) that his DCVG test followed standards set by the National Association of Corrosion Engineers;
>
> (2) that the DCVG test did not detect any holiday issues in the pipeline's coating in the area where the wick drains had been installed;
>
> (3) that "improper installation" is the primary cause of holidays;
>
> (4) that third-party damage to a pipeline is "very apparent" in contrast to damage caused by improper installation;
>
> (5) that third-party damage caused by "some kind of mechanical machine [is] normally going to damage the pipe as well as the coating";
>
> (6) that installation of a wick drain "would definitely damage a pipeline if it got broken into it";
>
> (7) that, when he conducted the DCVG test, he did not believe that the wick drains had hit the pipeline; and
>
> (8) that no pipeline coating can withstand being hit by a wick drain.

¶8 Conoco filed a motion in limine, seeking in part to exclude several of Cathey's statements on the ground that admission would violate rule 702 of the Utah Rules of Evidence. Specifically, Conoco argued that Defendants had "failed to demonstrate and lay foundation establishing that Mr. Cathey is qualified as an expert to testify about the effects that would

result from a wick drain hitting the [pipeline]." Conoco further noted that Cathey had "offered no analysis or explanation of how he reached his purported opinion[s]" and asserted that the statements were too speculative and conclusory to satisfy rule 702. The district court reviewed the deposition and noted that Conoco's counsel had objected to the questions that elicited those statements. The court stated that if the same objections had been made during trial, it would have sustained them. The district court admitted Cathey's deposition statements that discussed holiday damage to a pipeline due to impacts, detection of holidays via DCVG testing, and the likelihood of damage to a pipeline and its coating when a "mechanical machine" impacts the pipeline. The court excluded the statements specific to wick drains, wick-drain installation, and the potential for holidays when a wick drain strikes a pipeline during installation.[4]

---

4. Cathey's seventh statement was that, because the results of the DCVG test did not indicate a holiday and because he did not see wick drains on the surface near the pipeline's marked path, Cathey did not believe the wick drains had hit the pipeline. Our review of the transcript suggests that the district court neither discussed this seventh statement nor ruled it inadmissible. Rather, it appears that the court simply admitted portions of Cathey's deposition that discussed DCVG testing and pipeline damage generally and excluded those specific portions touching on the possibility of damage due to wick-drain installation. On appeal, both parties treat the seventh statement as excluded, and we follow their lead. To the extent that the seventh statement was based on Cathey's observation of where the wick drains were installed, we conclude that such percipient testimony was outside the province of an expert witness because no specialized knowledge was necessary. And to the extent that the seventh statement was based on Cathey's beliefs regarding the process of wick-drain installation, our determination that those beliefs were

(continued…)

¶9      Conoco called a percipient witness, Mike Miller, to testify about the damage he had seen on the pipeline. Although Miller was called to testify about his observations of the damage, Conoco also asked him to describe DCVG testing during direct examination. Miller explained DCVG testing and then opined, without prompting, "Works pretty good for your typical pipeline, which is three to six foot deep. It's . . . a crap shoot on a thirty foot pipe." Defendants objected, asserting that this statement amounted to expert testimony and was inadmissible because Miller had not been called as an expert witness and therefore Conoco had not presented credentials or otherwise explained why Miller was qualified as an expert in this field.

¶10     Outside the presence of the jury, the district court heard argument from the parties about the problematic statement. The court noted that it considered Miller's statement to be inadmissible, but expressed concern that instructing the jury not to consider the statement would only emphasize it. Defendants agreed, asking instead for "an order from the court that it is not used in closing arguments." After further discussion, the court and Conoco agreed to Defendants' proposed course of action.

¶11     The jury returned a verdict in favor of Conoco, and Defendants timely appealed.


ISSUES AND STANDARDS OF REVIEW

¶12     Defendants contend that the district court misinterpreted or misapplied Utah Rule of Evidence 702 when it struck the sixth and eighth statements from Cathey's deposition. We review a district court's decision to admit or exclude expert witness testimony for an abuse of discretion and will not reverse that

_____

(…continued)
properly excluded settles any remaining question as to the seventh statement's admissibility. *See infra* ¶ 17.

decision unless it exceeds the limits of reasonability. *State v. Shepherd*, 2015 UT App 208, ¶ 11, 357 P.3d 598.

¶13   Defendants also contend that "the district court erred by not striking, and not instructing the jury to disregard, an unsolicited expert opinion [offered by] fact witness Mike Miller." Pursuant to the invited-error doctrine, we generally will not review a district court's action when the party now alleging error in that action led the court to undertake it. *See, e.g., Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 12, 163 P.3d 615; *Pratt v. Nelson*, 2007 UT 41, ¶¶ 17–18, 164 P.3d 366.

ANALYSIS

I. Wick-Drain Testimony

¶14   Defendants first contend that the district court should have allowed the jury to consider Cathey's sixth and eighth deposition statements about wick drains. Cathey had been called as an expert witness, and because he was not available at trial, portions of his deposition were read into evidence. Rule 702 of the Utah Rules of Evidence governs the admissibility of expert witness testimony:

> [A] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Utah R. Evid. 702(a). The rule then goes on to describe limits on the expert knowledge that may serve as a basis for expert testimony, i.e., the principles or methods underlying it must be reliable and properly applied to sufficient facts. *See id* R. 702(b). Experiential expert testimony, where prior exposure to a similar

or nearly identical situation provides the knowledge upon which the testimony is based, is admissible under this rule. *See Eskelson ex rel. Eskelson v. Davis Hospital & Medical Center*, 2010 UT 59, ¶ 15, 242 P.3d 762; *State v. Shepherd*, 2015 UT App 208, ¶ 34, 357 P.3d 598. This court has recently addressed the requirements for admitting experiential expert testimony:

> The trial court could properly admit the . . . expert's testimony if the court reasonably determined (1) that scientific, technical, or other specialized knowledge would assist the jury to understand the evidence or determine a fact in issue; (2) that the witness was qualified as an expert by knowledge, skill, experience, training, or education; and (3) that the [proponent] made a threshold showing that the principles or methods underlying the testimony were reliable, were based on sufficient facts or data, and had been reliably applied to the facts . . . .

*Shepherd*, 2015 UT App 208, ¶ 31; *see also id.* ¶ 34.

¶15     On appeal, the parties each assert that *Shepherd* supports their preferred outcome: Defendants contend that Cathey's work experience qualified him as an expert; Conoco responds that Cathey's work experience did not do so with respect to wick drains and that Defendants and Cathey failed to make the threshold showing of reliability and sufficiency.

¶16     *Shepherd* states the uncontroversial proposition that an individual's practical experience can substitute for formal education when determining if the individual is an expert pursuant to rule 702. *See id.* ¶ 34. An experiential expert witness must explain how his or her experience led to the conclusion reached, why his or her experience was a sufficient basis for that conclusion, and how his or her experience was reliably applied to the facts. *Id.* The question here is whether Cathey's prior

experience with coating holidays and his single observation of wick drains being installed was a sufficient basis for his conclusions that a wick drain could "definitely" damage a pipeline and that no pipeline could withstand a wick-drain installation hitting it.

¶17    When ruling on the admissibility of Cathey's deposition statements, the district court highlighted the lack of connection between Cathey's experience of watching wick drains being placed and his statements that wick-drain installation could damage a pipeline. Indeed, Cathey admitted that he was "not familiar with [wick-drain installation] whatsoever" and that he had not previously observed an instance "where a pipe was struck by a wick drain installer." The district court also noted that Cathey did not know how much power was used to install wick drains or what effect 28 feet versus 4 feet of dirt may have had. More importantly, neither Defendants nor Cathey showed that "the principles or methods underlying the testimony," i.e., observing the wick-drain installation, "were reliable, were based on sufficient facts or data, and had been reliably applied to the facts" such that Cathey could be properly deemed an experiential expert witness on this topic. *See Shepherd*, 2015 UT App 208, ¶ 31. On appeal, Defendants extensively review Cathey's experience with coating holidays and the fact that on one occasion Cathey watched wick drains being installed. But this does not address the problem; although Cathey had some level of familiarity with wick drains, he never explained how that familiarity led to a conclusion about this particular pipeline damage. *See id.* And because he was not available at trial, this deficiency could not be remedied on the stand. On this record, we conclude that the district court did not exceed the limits of reasonability when it determined that Cathey was not qualified as an experiential expert witness to testify about the potential for wick-drain installation to damage the pipeline in these circumstances.

¶18    It is worth noting that the district court ruled Cathey *was* qualified as an experiential expert witness on other topics. For

example, the court ruled admissible Cathey's statements that damage to a pipeline would also damage the anti-corrosion coating, because the court determined Cathey had sufficient "experience in seeing third party damage to a pipeline." Thus, the statements concerning the general cause of holidays were admissible, including the fifth statement—that damage caused by "some kind of mechanical machine [is] normally going to damage the pipe as well as the coating." The court's ruling therefore properly (1) allowed the jury to hear that items striking the pipeline, particularly those driven by machinery, were likely to cause damage to the anti-corrosion coating while (2) excluding any possible suggestion from Cathey's deposition, based on his alleged expertise, that wick-drain installation posed a different or greater danger.

## II. Improper Expert Opinion

¶19    Defendants next contend that "the district court erred by not striking, and not instructing the jury to disregard, an unsolicited expert opinion [offered by] fact witness Mike Miller." Conoco responds that Defendants invited any error when they waived the giving of a curative instruction by agreeing with the district court that ordering the parties not to refer to the objectionable testimony during closing arguments was a sufficient remedy.

¶20    The invited-error doctrine precludes a party from taking advantage of an error committed at trial when that party led the trial court into committing the error. *See Cea v. Hoffman*, 2012 UT App 101, ¶ 13, 276 P.3d 1178. The invited-error doctrine "is crafted to discourage parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal, as well as to give the trial court the first opportunity to address the claim of error." *Id.* ¶ 13 (citation and internal quotation marks omitted). An affirmative representation that a party has no further objection to the proceedings falls within the ambit of the invited-error doctrine "because such representations reassure the trial court and encourage it to proceed" without

further consideration of alternative or additional remedial measures. *See id*. (citation and internal quotation marks omitted).

¶21    Here, Miller was asked to describe DCVG testing and did so. But Miller continued by expressing doubt about the efficacy of DCVG testing on this pipeline: "Works pretty good for your typical pipeline, which is three to six foot deep. It's . . . a crap shoot on a thirty foot pipe."

¶22    Defendants objected and, outside the presence of the jury, "move[d] to strike the opinion of this witness about the . . . effectiveness of the DCVG test." Defendants also noted that Miller had not been designated as an expert pursuant to rule 702. In essence, Defendants initially appeared to raise two challenges: first, that Miller should not have been allowed to describe DCVG testing and second, that Miller should not have been allowed to opine on the efficacy of DCVG testing on thirty-foot deep pipelines. However, after the court expressed confusion, Defendants clarified that they "only objected when he said about the validity of [DCVG testing] at 28 to 30 feet" because Miller was "commenting, giving expert opinion, really attacking another expert's opinion when he doesn't have his own expert opinion."

¶23    The court agreed that Miller's statement regarding the DCVG testing at thirty feet was inadmissible but worried that, "if I do what you say, I'm going to say, okay, ladies and gentlemen, I want you to strike from your memory the testimony of Mr. Miller regarding the usefulness of the DCVG at 28 feet. And so I'm just going to emphasize the issue." After further discussion, the district court repeated its concern and Defendants interrupted to propose a solution:

> THE COURT: [I]f you want me to—if you want me to right now say, jury, forget what he said about this, then I'm emphasizing it. I don't know what— if that's what you want me to do—

> [Defendants' counsel]: I agree, your Honor, and I don't think that's appropriate, but I would say I would like an order from the Court that it is not used in closing arguments: Remember when Mr. Miller said at 28, it's a crap shoot.

¶24    The parties and the court then discussed the scope of the proposed order, including if Miller could testify regarding whether he would have used DCVG testing on a pipeline buried 28 to 30 feet deep and whether Miller "considered [DCVG testing] to be, in essence, conclusive [as to] if there was or wasn't damage to the pipeline." The district court eventually ruled that Miller would not be allowed to opine on those issues by cutting off further examination of Miller regarding DCVG testing: "I'm going to say what he's testified, he's testified, and that's where I'm going to leave it. I'm not going to—let it be your next question. I think he's already said what he's said." Conoco then agreed to drop the DCVG line of questioning. Defendants' counsel responded, somewhat cryptically, "I agree, I think that solves [the] problem."

¶25    We recognize that it is not clear to which "problem" Defendants' counsel was referring. For the purposes of our analysis, we assume that Defendants were agreeing that Conoco's abandonment of the DCVG line of questioning would solve the problem of whether Miller could testify about his use of DCVG testing and his opinion of the conclusiveness of its results. Consequently, unlike Conoco, we do not assume that this agreement constituted Defendants' acquiescence to the court's adoption of Defendants' proposed solution regarding Miller's opinion that DCVG testing was ineffective at depths of 30 feet.

¶26    We nevertheless conclude that Defendants had already invited any error by waiving the giving of a curative instruction. The district court began by agreeing with Defendants that Miller's opinion that DCVG testing was "a crap shoot on a thirty foot [deep] pipe" was inadmissible. The court then discussed the

viability of remedying the situation with a curative instruction but noted that this risked highlighting the problematic statement in the jury's eyes. Defendants' counsel responded, "I agree, your Honor, and I don't think that's appropriate[.]" By doing so, Defendants affirmatively represented to the court that they no longer sought a curative instruction but would prefer instead to have the order. *See State v. McNeil*, 2013 UT App 134, ¶ 23 & n.3, 302 P.3d 844 ("A claim is not preserved for appeal if a party initially objects but later, while 'the wheel's still in spin,' abandons the objection and stipulates to the court's intended action." (Quoting Bob Dylan, The Times They Are A–Changin' (Columbia Records, 1964)), *aff'd*, 2016 UT 3, 365 P.3d 699); *see also Andersen v. Andersen*, 2016 UT App 182, ¶ 27, 379 P.3d 933; *In re Estate of Anderson*, 2016 UT App 179, ¶ 9, 381 P.3d 1179. This statement, in conjunction with Defendants' counsel's simultaneous proposal of an alternative remedy that did not involve a curative instruction, constituted a waiver. Because Defendants, through counsel, waived the giving of a curative instruction, they invited the court to take the action they now claim was error. The invited-error doctrine therefore forecloses an appeal predicated on this alleged error.[5]

---

5. Defendants assert that we may review this issue for plain error. *See, e.g.*, *State v. Waterfield*, 2014 UT App 67, ¶ 18, 322 P.3d 1194 ("The plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court."). They identify the admission of Miller's statement as the "harmful error." However, on appeal, the issue is whether the court's remedy was appropriate, not whether the admission of the underlying statement was erroneous. And, in any event, because Defendants invited any error in selecting a remedy, they cannot assert the plain-error doctrine as a means to escape the consequences of that invitation. *See State v. Brooks*, 2012 UT App 34, ¶ 14, 271 P.3d 831 ("[R]eview under the plain error doctrine is not available when counsel invites the error by affirmatively representing to the

(continued…)

¶27 Defendants also argue that rule 103(d) of the Utah Rules of Evidence required the district court to issue a curative instruction. *See* Utah R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). In Defendants' words:

> Rule 103(d) provides a procedural imperative that once a court determines evidence to be inadmissible, then 'by any means' it must conduct the trial so that the inadmissible testimony is not suggested to or heard by the jury. [A] curative instruction would have done so with the jury. . . .
>
> . . . . Once the Court determined that Mr. Miller's opinion was inadmissible, it should have complied with [rule 103(d)] by striking the opinion and issuing a curative instruction, irrespective of any input from counsel.

¶28 Thus, in Defendants' view, the parties' agreement as to the best remedial measure was immaterial, and the court should have overridden Defendants' own proposed course of action. The problems with such an interpretation of rule 103(d) are legion; however, for the purposes of this case, we need only note that Defendants did not raise this argument in their opening brief. Instead, it is raised in their reply brief. "Reply briefs shall be limited to answering any *new* matter set forth in the opposing brief." *See* Utah R. App. P. 24(c) (emphasis added). Because this is a fresh argument for reversal, it was improper to raise it only

---

(…continued)

district court that there is no objection to the proceedings."); *see also State v. Bullock*, 791 P.2d 155, 158 (Utah 1989) (stating that, "if a party through counsel . . . has led the trial court into error, we will then decline to save that party from the error").

in the reply brief. *See id.*; *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903. We consequently reject it.

## III. Cumulative Error

¶29    Defendants also seek relief pursuant to the cumulative-error doctrine. This argument is inadequately briefed, being confined to a single conclusory sentence in Defendants' opening brief. Defendants then improperly place the discussion and analysis of the cumulative-error doctrine in their reply brief. *See* Utah R. App. P. 24(c); *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903. We therefore reject it. But even if we were to consider the additional arguments improperly made in Defendants' reply brief, we would nevertheless conclude that the cumulative-error doctrine is inapplicable here.

¶30    The cumulative-error doctrine requires us to reverse if (1) we determine, or assume without deciding, that two or more errors occurred and (2) we determine that the cumulative effect of those errors undermines our confidence that a fair trial was had. *See, e.g.*, *State v. McNeil*, 2013 UT App 134, ¶¶ 16, 70, 302 P.3d 844, *aff'd*, 2016 UT 3, 365 P.3d 699. Our confidence is more likely to be shaken when the errors work together in a pernicious manner so as to cause more prejudice than the mere sum of the individual errors. *Cf. State v. Wright*, 2013 UT App 142, ¶ 45, 304 P.3d 887 (cumulating two errors and determining that they "d[id] not take on significance when considered together" and were "relatively minor in the context of the trial as a whole.")

¶31    The gist of Defendants' contention is that the two alleged errors reinforced one another. Specifically, Defendants argue that the exclusion of Cathey's expert opinion and the inclusion of Miller's speculative opinion couched in expert terms worked together to misinform the jury. However, we have determined that the district court's decision to exclude portions of Cathey's expert opinion was not erroneous, because the decision did not exceed the limits of reasonability. *See supra* ¶ 17. And we determined that Defendants invited any error in the district

court's failure to give the jury a curative instruction. *See supra* ¶ 26. Even assuming, without deciding, the dubious proposition that an invited error should be considered in the cumulative-error analysis, there would still be only a single error in this case. Because the cumulative-error doctrine does not apply when there is only one error demonstrated or assumed on appeal, the doctrine would have no application here. *See, e.g.*, *McNeil*, 2013 UT App 134, ¶¶ 16, 70–71.

## CONCLUSION

¶32    The district court's decision to exclude the wick-drain installation portions of Cathey's deposition did not exceed the limits of reasonability and was therefore proper. Defendants' waiver of a curative instruction invited any error in the district court's failure to instruct the jury to disregard certain improper testimony. Finally, the cumulative-error doctrine has no application when only a single error has been determined or assumed on appeal.

¶33    Affirmed.[6]

---

6. The written agreements between UDOT and Conoco stated that "[t]he prevailing party in any litigation arising hereunder shall be entitled to its reasonable attorney fees and court costs, including fees and costs incurred through any applicable appeal process." We therefore award Conoco its attorney fees reasonably incurred on appeal and remand to the district court for the limited purpose of calculating the amount of those fees.