**2019 UT App 126**

## THE UTAH COURT OF APPEALS

GARY WILSON,
Appellee,
*v.*
ELISABETH W. SANDERS AND HIRAM SANDERS,
Appellants.

Amended Opinion[1]
No. 20180048-CA
Filed July 18, 2019

Third District Court, Salt Lake Department
The Honorable Matthew Bates
The Honorable Patrick Corum
No. 160901482

Richard Lee Sanders, Attorney for Appellants

Clinton Justin Cutler, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

HARRIS, Judge:

¶1     After Elizabeth Wilson (Mother) died, her two adult
children ended up in litigation over her estate. Gary Wilson
(Plaintiff) sued his sister Elisabeth W. Sanders (Sister) and her

---

1. This Amended Opinion replaces the Opinion in Case No.
20180048-CA that was issued on June 27, 2019. After our original
opinion issued, we noted a matter in Paragraph 25 that required
clarification, and we amended that paragraph and added
footnote 4. This Amended Opinion does not alter any of the
conclusions reached in our original opinion.

husband Hiram Sanders (collectively, Defendants), seeking an order invalidating Mother's most recent testamentary instrument on the grounds that Defendants had subjected her to undue influence, and alleging that Defendants had intentionally inflicted emotional distress upon him. The case was eventually tried to a jury, which was persuaded by Plaintiff's arguments and not only found that Defendants had unduly influenced Mother, but also awarded Plaintiff $170,000 on his emotional distress claim, most of which was for punitive damages. Defendants now appeal, and raise various arguments assailing the jury's verdict. We affirm.

BACKGROUND[2]

¶2     In December 2000, Plaintiff permanently relocated from Colorado to Utah to help care for his aging parents, and moved into their house. Plaintiff paid monthly rent and lived in the basement, while his parents lived upstairs. Plaintiff was employed as a school bus driver, which allowed him to spend time at home caring for his parents and maintaining the house. Plaintiff testified that, during this time, Defendants—who lived in Utah—came to the house to visit only once or twice a year, usually on major holidays. In 2006, Mother created a revocable trust (First Trust) that listed both Plaintiff and Sister as beneficiaries, each slated to receive an equal distribution of trust assets. In 2008, Plaintiff and Sister's father passed away.

¶3     In February 2015, at the age of eighty-five, Mother fell in a parking lot and hit her head, requiring emergency cranial surgery. Following the surgery, Mother had difficulty speaking

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 3, 82 P.3d 1064 (quotation simplified).

and forming sentences, and even had a hard time recognizing her children. According to Plaintiff, she seemed "eager to please" and "very susceptible to suggestion and manipulation."

¶4      In April 2015, at Defendants' suggestion, Mother revoked the First Trust and created a second trust (Second Trust), changing the identity of the trustee to an attorney selected by Sister, but not changing the identity of the beneficiaries. One month later, Mother amended the Second Trust to alter the percentage of assets her children would receive, changing the arrangement from fifty-fifty to sixty-forty in favor of Plaintiff.

¶5      In July 2015, without informing Plaintiff, Defendants took Mother out of her home and placed her in a hotel room, where she resided for six weeks. During this time, Defendants did not allow Mother to make or receive phone calls and Plaintiff was unable to contact her. While still living in the hotel and out of contact with Plaintiff, Mother met with the attorney/trustee and again revised her trust (Third Trust), this time removing Plaintiff as a beneficiary entirely and leaving everything to Sister and Sister's children. At the time, Plaintiff was unaware that Mother had disinherited him.

¶6      Defendants finally allowed Mother to return to her home on the condition that Plaintiff vacate the basement apartment. Plaintiff complied, and Defendants moved into the basement apartment, a series of events that caused the relationship between Plaintiff and Defendants to become even more tense. After they moved into Mother's house, Defendants continued to deny Plaintiff visits with Mother, and on multiple occasions they called the police when Plaintiff tried to visit Mother in her home. However, on each such occasion Plaintiff was allowed to see Mother after the officers spoke to her and confirmed that, as far as she was concerned, Plaintiff was welcome in her home.

¶7     Also during this time, Plaintiff claimed that his emotional and mental health went into decline. According to Plaintiff, not being able to contact Mother caused him "significant emotional distress" and "affected his work performance in such a way that his job was in jeopardy." Indeed, Plaintiff's supervisor testified that, on one occasion, Plaintiff appeared so distraught at work that she feared he could not perform his job safely, so she sent him home for the day. In addition, his coworker and neighbor testified that his lighthearted personality disappeared and that he began to vocalize suicidal thoughts. Plaintiff testified that he ended up in the hospital on two occasions, and underwent "numerous therapy sessions" in an effort to restore his mental health. On one occasion, Plaintiff drew a bullet on a calendar, indicating the date on which he planned to commit suicide. Plaintiff's neighbor was so concerned about Plaintiff that he called both the police and Defendants to inform them about Plaintiff's suicidal comments. When the neighbor told Defendants about the calendar, Sister remarked, "Wouldn't that make things easier?"

¶8     In January 2016, Mother slipped into a coma, but Defendants did not promptly notify Plaintiff about Mother's declining condition; Plaintiff did not learn about her condition until three days later. Shortly thereafter, Mother passed away. Plaintiff first heard the news from Sister when he called to check on Mother. Although Plaintiff was at work only a few minutes away at the time of Mother's passing, Defendants did not inform him when Mother had "only hours to live." Plaintiff testified that not being with Mother at the time of her death was traumatic—something "[t]hat's going to mess with [him] the rest of [his] life."

¶9     After Mother's passing, Plaintiff discovered that he had been completely disinherited under the Third Trust. Plaintiff then filed suit seeking to invalidate the Third Trust on the basis of undue influence. He also brought a claim against Defendants

for intentional infliction of emotional distress (IIED). Following a three-day trial, Defendants' counsel moved for a directed verdict as to Plaintiff's undue influence claim. The trial court denied the motion and the case was sent to the jury, which found in favor of Plaintiff and invalidated the Third Trust on the basis of undue influence. The jury also found in favor of Plaintiff on his IIED claim, awarding him both non-economic and punitive damages. The jury found Defendants each separately liable to Plaintiff for $10,000 in compensatory non-economic damages, and in addition awarded Plaintiff $150,000—for which Defendants were jointly and severally liable—in punitive damages.

¶10 Following the trial, Defendants timely filed a motion, grounded in rule 60 of the Utah Rules of Civil Procedure, to vacate the judgment. On March 29, 2018, the court entered final judgment on the verdict, and a few days later, on April 8, 2018, the trial court issued a written minute entry denying the rule 60 motion. Then, on April 24, 2018, Defendants filed a notice of appeal (Notice), which states as follows:

> The Appeal is taken from the Final Judgment entered March 29th, 2018, and against orders or rulings upon motions such that if the Final Judgment be reversed . . . that necessarily shall be of same effect on any such irrevocably linked byproduct of the Judgment.

Defendants now appeal from the trial court's entry of judgment on the jury verdict and from its post-judgment denial of their rule 60 motion.

ISSUES AND STANDARDS OF REVIEW

¶11 Defendants raise five issues for our review. The first two issues consist of challenges to the sufficiency of the evidence.

First, Defendants contend that "the jury's award of damages for [IIED should] be vacated" because it was not supported by sufficient evidence. Second, Defendants contend that "the jury's award of punitive damages [should] be vacated because it was not based on sufficient evidence," and it "exceeds established limits for punitive damages awards." When considering an insufficiency of the evidence claim on appeal, "we do not weigh the evidence de novo." *Water & Energy Sys. Tech., Inc. v. Keil*, 2002 UT 32, ¶ 15, 48 P.3d 888 (quotation simplified). Rather, we view "the evidence in the light most favorable to the prevailing party," *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991), and we reverse a jury's verdict only when "the evidence presented at trial is so lacking that reasonable minds could not have reached the conclusion that the jury reached," *Harding v. Bell*, 2002 UT 108, ¶ 14, 57 P.3d 1093.

¶12     Third, Defendants contend that the trial court erred in denying their motion for a directed verdict on Plaintiff's undue influence claim. We review a trial court's decision on a motion for a directed verdict for correctness, and a trial court may enter a directed verdict "only if, after looking at the evidence and all reasonable inferences in a light most favorable to the nonmoving party," it "concludes that there is no competent evidence which would support a verdict in the nonmoving party's favor." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 34, 372 P.3d 629 (quotation simplified).

¶13     Fourth, Defendants contend that the trial court erred in denying their rule 60 motion to vacate the judgment. Ordinarily, we review the denial of a motion to vacate a judgment for abuse of discretion. *Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 5, 334 P.3d 1004. However, in this case, we lack jurisdiction to consider the merits of this issue, because Defendants did not specifically include it in their Notice. *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474; *see also Perea v. State*, 2017 UT App 67, ¶ 6, 397 P.3d 770 (stating that "a ruling on a

rule 60(b) motion culminates in a separate, appealable order" that usually "may not be included in an existing appeal because the issues raised in the appeal predated the ruling on the rule 60(b) motion" (quotation simplified)).

¶14 Fifth, Defendants contend that the trial court erred "in permitting inadmissible and prejudicial testimony throughout the trial." "We grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion." *Robinson v. Taylor*, 2015 UT 69, ¶ 8, 356 P.3d 1230 (quotation simplified).

¶15 Additionally, pursuant to rule 33 of the Utah Rules of Appellate Procedure, Plaintiff seeks an award of attorney fees and costs incurred in defending this appeal on the grounds that Defendants' appeal is frivolous or brought for delay.

## ANALYSIS

### I. Sufficiency of the Evidence

A. Jury's Award of Damages for IIED

¶16 Defendants first challenge the jury's award of damages for IIED, contending that the award should be set aside because it was not supported by sufficient evidence. We disagree.

¶17 When challenging the sufficiency of the evidence underlying a jury's verdict, the party making the claim must demonstrate "that the [verdict] lack[s] substantial evidentiary support." *Water & Energy System Tech., Inc. v. Keil*, 2002 UT 32, ¶ 15, 48 P.3d 888. Accordingly, the appealing party should "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *Chapman v. Uintah County*,

2003 UT App 383, ¶ 31, 81 P.3d 761 (quotation simplified). Although recent case law dictates that a challenge to the sufficiency of the evidence will no longer fail solely because of a "technical deficiency in marshaling," a party "will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal." *State v. Nielsen*, 2014 UT 10, ¶¶ 41–42, 326 P.3d 645. Here, Defendants have "made no attempt to marshal the evidence in support of the jury['s] finding of [IIED]," s*ee Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991), nor have they otherwise persuasively demonstrated why the verdict should be set aside, *see Nielsen*, 2014 UT 10, ¶¶ 41–42.

¶18 After a three-day trial, the jury found that Defendants had intentionally inflicted emotional distress on Plaintiff, and awarded him both compensatory and punitive damages. "In Utah, a claim for [IIED] is actionable if: (i) the defendant's conduct is outrageous and intolerable . . . ; (ii) the defendant intends to cause . . . emotional distress; (iii) the plaintiff suffers severe emotional distress; and (iv) the defendant's conduct proximately causes the plaintiff's emotional distress." *Hatch v. Davis*, 2004 UT App 378, ¶ 40, 102 P.3d 774. Here, although the evidence was certainly conflicting, the record contains evidence sufficient to support each element of an IIED claim.

¶19 First, there was evidence that Defendants' conduct was "outrageous and intolerable." *See id.* For example, there was evidence that it was not until after Mother had suffered a head injury that Defendants began to take much of an interest in her, and that, after the injury, Defendants attempted to take control of Mother's care by removing her from her home and cutting her off from Plaintiff. During this period, they refused to allow Mother to use her phone and they brought about Plaintiff's eviction from the home he had been sharing with Mother for the past fifteen years. After Mother returned home, Defendants sometimes called the police on Plaintiff when he tried to visit Mother. But the police reports contain evidence that the calls

were frivolous and that Plaintiff was not actually a threat to Mother. And although Plaintiff worked in close proximity to Mother's house, he was not able to be with her at the time she passed, because Defendants did not inform him that she had "only hours to live."

¶20 Second, there is evidence that Defendants intended their actions to cause Plaintiff emotional distress. *See id.* At trial, both Defendants admitted to being aware that Plaintiff was apparently depressed and suicidal, and the jury heard evidence from which it could reasonably infer that Plaintiff's depression stemmed from the turmoil within his family. Furthermore, after learning that Plaintiff was contemplating suicide, Defendants remarked to a neighbor that Plaintiff's suicide would "make things easier."

¶21 Third, there was evidence presented to support the conclusion that Plaintiff did indeed suffer severe emotional distress. *See id.* Among other things, Plaintiff was unable to perform his job safely and was sent home from work; he was hospitalized and needed multiple therapy sessions; and his coworkers and close friends observed that he had become increasingly depressed and suicidal.

¶22 Fourth, the record supports the conclusion that Plaintiff's emotional distress was proximately caused by Defendants' actions. *See id.* Notably, Plaintiff's coworkers and friends noticed that his behavior changed and he became depressed and potentially suicidal after Defendants began to interfere with his relationship with Mother.

¶23 In sum, Defendants have not demonstrated a reason for us to overcome the "healthy dose of deference owed to . . . jury verdicts." *See Nielsen*, 2014 UT 10, ¶ 41. There existed evidence on both sides of this question, and the jury could readily have returned a verdict in favor of Defendants on the IIED claim. But

the jury apparently found Plaintiff's version of events more credible and, on these facts, that was its decision to make. *See Carlton v. Brown*, 2014 UT 6, ¶ 51, 323 P.3d 571 ("Where reasonable men may differ, it is for the jury . . . to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (quotation simplified)). We are therefore unpersuaded that there existed insufficient evidence to support the jury's determination that Defendants intentionally caused Plaintiff emotional distress.

B.      Jury's Award of Punitive Damages

¶24      Defendants next argue that the jury's award of punitive damages should be vacated because "it was not based on sufficient evidence" and it "exceeds established limits for punitive damages awards."[3] We disagree. Here, Defendants

---

3. Defendants also assert that the jury's punitive damages award was inappropriate because it held Defendants "jointly and severally liable for punitive damages." But Defendants invited the trial court to adopt a special verdict form that provided only one "joint and several" line for any punitive damages award, and therefore any error on this point—if error exists, a conclusion we stop short of drawing—constitutes "invited error," which "preclud[es] appellate review." *See Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366 (quotation simplified); *see also State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 ("[A] party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." (quotation simplified)). During trial, the court reviewed the proposed special jury verdict form with both parties and, of its own accord, noted that the form provided for just "one award of punitive damages" with no provision for "decid[ing what] each one owes," and asked whether it needed to "separate this out" to allow the jury to make clear which defendant would owe what

(continued…)

have failed to persuade us that there is insufficient evidence to support the jury's award of punitive damages. First, Defendants have "made no attempt to marshal the evidence in support of the jury['s] finding of [punitive damages]." *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991). While, as noted, this failure to marshal no longer merits an automatic default, *see State v. Nielsen*, 2014 UT 10, ¶¶ 41–42, 326 P.3d 645, Defendants make no attempt to address the evidence supporting the award, as outlined above. In short, after reviewing the record, we are convinced that the punitive damages verdict was supported by sufficient evidence.

¶25 With regard to excessiveness, the only argument Defendants make is one grounded in constitutionality, citing our supreme court's pronouncement that "ratios exceeding single-

---

(…continued)

amount of punitive damages. However, both attorneys indicated that they would prefer to keep just one line for punitive damages. As we have previously recognized, an "affirmative representation" that a party has no further objection to a jury instruction "falls within the ambit of the invited-error doctrine." *ConocoPhillips Co. v. Utah Dep't of Transp.*, 2017 UT App 68, ¶ 20, 397 P.3d 772; s*ee also State v. Chaney*, 1999 UT App 309, ¶ 55, 989 P.2d 1091 (finding invited error when a defendant objected to the trial court's use of a correct jury instruction and later challenged the substituted erroneous jury instruction on appeal); *State v. Perdue*, 813 P.2d 1201, 1206 (Utah Ct. App. 1991) (finding invited error where a defendant challenged an instruction that he had submitted to the trial court). Because Defendants' counsel was given an opportunity to object to the one-line entry on the special verdict form for punitive damages and indicated his assent, any error in the verdict form on this point was invited. Accordingly, we do not consider this issue further.

digits . . . mark the outer limits of due process." *See Campbell v. State Farm Mut. Auto Ins. Co.*, 2004 UT 34, ¶ 39, 98 P.3d 409.[4] Indeed, in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court recognized that punitive damages awards that do not exceed a single-digit ratio between punitive and compensatory damages will likely comport with due process. *Id.* at 425. Here, the jury awarded Plaintiff $20,000 in compensatory damages and $150,000 in punitive damages, a ratio of 7.5 to 1. Such an award therefore falls within the constitutionally acceptable bounds recognized by the United States Supreme Court. We therefore reject Defendants' arguments to the contrary.

## II. Denial of Directed Verdict

¶26 Defendants next contend that the trial court erred in denying their motion for a directed verdict on Plaintiff's undue influence claim. This claim fails for the same reasons articulated above; namely, Defendants have failed to meet their burden of persuasion. Our "standard of review of a directed verdict is the same as that imposed upon a trial court." *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 21, 417 P.3d 95 (quotation simplified). "A trial court is

---

4. Defendants make no other argument with regard to the ratio between the award of compensatory damages and the award of punitive damages, and specifically raise no argument that the ratios involved in this award were excessive under the framework articulated by our supreme court in *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991). *Id.* at 810 (stating that "[t]he general rule" is "where the punitives are well below $100,000, punitive damage awards beyond a 3 to 1 ratio to actual damages have seldom been upheld," and that for punitive damages awards over $100,000 "the acceptable ratio appears lower"). We therefore do not address any such argument.

justified in granting a directed verdict only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Id.* (quotation simplified). Defendants have failed to demonstrate that there was "no competent evidence" to support the jury's finding that Mother disinherited Plaintiff while under the undue influence of Defendants. *See id.* (quotation simplified). In fact, as discussed above, there was evidence that Mother amended her trust after sustaining a head injury, which left her disoriented, and during the time when Defendants had sequestered Mother in a hotel where she was cut off from all contact with the outside world. While a jury could reasonably have reached the opposite conclusion, and found in favor of Defendants on this point, the jury's decision to believe Plaintiff's version of events over Defendants' was not unreasonable and was supported by competent evidence. The trial court therefore did not err in denying Defendants' motion for a directed verdict.

### III. Denial of Rule 60 Motion

¶27 Defendants also challenge the trial court's denial of their rule 60 motion. But this challenge falls outside the scope of our jurisdiction because Defendants did not identify this issue in their Notice. Rule 3(d) of the Utah Rules of Appellate Procedure requires that a notice of appeal "designate the judgment or order, or part thereof, appealed from." Utah R. App. P. 3(d). Defendants' Notice, which was filed on April 24, 2018, states that the "Appeal is taken from the Final Judgment entered March 29th, 2018, and against orders or rulings upon motions" that are bound up with the final judgment. But the Notice does not identify the trial court's later order denying their rule 60 motion.

¶28 Our appellate jurisdiction is limited to considering only the orders and judgments specified in the notice of appeal. If the notice fails to identify the specific order sought to be appealed,

we cannot assume jurisdiction over the appeal. *See Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474 (holding that "rule 3(d)'s requirement is jurisdictional" and that "the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case" (quotation simplified)); *see also Pulham v. Kirsling*, 2019 UT 18, ¶ 27 (exercising appellate jurisdiction over only the three issues specifically referenced in the notice of appeal). However, our supreme court has recognized "that the language of rule 3(d) [does] not require a party appealing from an entire final judgment to specify each interlocutory order of which the appellant seeks review." *Zions First Nat'l Bank, NA v. Rocky Mountain Irrigation, Inc.*, 931 P.2d 142, 144 (Utah 1997) (quotation simplified). Thus, "when an appeal is taken from a final judgment, there is no requirement that the notice designate intermediate orders which are to be raised as issues on appeal." *U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 13, 990 P.2d 945 (quotation simplified); *see also* 16A Charles Alan Wright et. al., *Federal Practice & Procedure Jurisdiction* § 3949.4 (4th ed. 2019) ("A notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders, at least if the earlier orders are part of the progression that led up to the judgment rather than being separate from that progression."). Because Defendants referenced the entire final judgment in their Notice rather than merely discrete parts of it, *see Pulham*, 2019 UT 18, ¶¶ 25–27, we have jurisdiction to consider a challenge to the final judgment itself as well as any earlier intermediate orders bound up or subsumed in the final judgment.

¶29 Accordingly, the question we must address is whether the trial court's order denying Defendants' rule 60 motion was subsumed in the final judgment. Defendants' Notice states that

their "[a]ppeal is taken from the Final Judgment entered March 29th, 2018." But the trial court did not deny the rule 60 motion until April 8, 2018, more than a week after the entry of the final judgment. Because they are issued *after* final judgment, post-judgment orders are ordinarily not subsumed in the final judgment, and generally parties must either file a separate notice of appeal regarding those orders or, if they are entered before the filing of the notice of appeal, at least specifically mention them in the notice of appeal being taken from the final judgment. *See Dennett v. Ferber*, 2013 UT App 209, ¶ 3, 309 P.3d 313 (per curiam) (finding that because a "ruling on a rule 60(b) motion culminates in a separate, appealable order . . . this court lacks jurisdiction to resolve issues raised in a ruling on a rule 60(b) motion unless a new notice of appeal has been filed"). Here, entry of the trial court's order denying Defendants' rule 60 motion occurred post-judgment, and Defendants offer no argument for how such an order could possibly have been subsumed within the earlier entered final judgment, or been part of the progression that led to it. Accordingly, because Defendants did not specifically state, in their Notice, that they intended to appeal from that order, we lack jurisdiction to consider an appeal from the order denying the rule 60 motion.

## IV. Impermissible and Prejudicial Trial Testimony

¶30    Next, Defendants contend that the trial court erred in "permitting inadmissible and prejudicial testimony throughout the trial." But Defendants failed to object at trial to any testimony as being "prejudicial," and therefore did not present the issue to the trial court "in such a way that the court ha[d] an opportunity to rule on it." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation."). Accordingly, this issue has not been preserved for our review. A party that "wishes an appellate

court to address" an unpreserved issue "must argue that an exception to preservation applies." *Id.* ¶ 27. Here, Defendants do not argue for the applicability of any particular exception to our preservation rules. Accordingly, we do not discuss the matter further. *See, e.g.*, *Federated Capital Corp. v. Deutsch*, 2018 UT App 118, ¶ 21, 428 P.3d 51 (declining to "reach the merits" of an issue because it was not preserved for appellate review, and the appellant did "not assert that an exception to the preservation rule applies").

## V. Attorney Fees

¶31    Finally, Plaintiff asks us, pursuant to rule 33 of the Utah Rules of Appellate Procedure, to award him the attorney fees he has incurred in defending against this appeal. Although we affirm the judgment in favor of Plaintiff, we deny his request for attorney fees.

¶32    Pursuant to rule 33, if we determine that a motion or appeal is "either frivolous or for delay," we must award "reasonable attorney fees to the prevailing party." Utah R. App. P. 33(a). Although Plaintiff is the prevailing party on appeal, we cannot conclude that Defendants' appeal, taken as a whole, was "frivolous" or intended for "any improper purpose." *See id.* R. 33(b) (defining a frivolous appeal as "not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law," and an appeal for delay as "one interposed for any improper purpose such as to harass, cause needless increase in the cost of litigation, or gain time that will benefit only the party filing the appeal"); *see also Tobler v. Tobler*, 2014 UT App 239, ¶ 47, 337 P.3d 296 (holding that "the imposition of rule 33 sanctions is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions" (quotation simplified)). As such, we conclude that an award of attorney fees under this rule would be inappropriate.

CONCLUSION

¶33    For the reasons articulated above, we affirm the ruling of the trial court in all respects, but decline to award Plaintiff the attorney fees he incurred in defending the appeal.[5]

───────────

5. For the reasons set forth herein, we also deny Defendants' pending Motion for Extraordinary Relief or Other Appropriate Relief, as well as Defendants' pending Motion for Summary Reversal of Clear and Prejudicial Errors.