Dale CHILD, Plaintiff and Appellant,

v.

Andria D. Newsom GONDA, Defendant
and Appellee.

No. 960249.

Supreme Court of Utah.

Oct. 13, 1998.

Rehearing Denied Feb. 4, 1999.

RUSSON, Justice.

## INTRODUCTION

Dale Child appeals a district court's final judgment and order in favor of Andria Newsom Gonda. Child sued Gonda for wrongfully causing the death of his daughter, Mindy Child, in an automobile accident. The jury found that Gonda was not negligent. Child then moved the district court for a partial judgment notwithstanding the verdict and for a new trial, but that court denied his request.[1] We affirm.

## BACKGROUND

On April 17, 1991, Mindy Child was killed in a two-vehicle collision on U.S. Highway 89 in Davis County. She was a passenger in a Volkswagen "Beetle" driven by her 16–year–old friend, Jesse Deller. Deller, who had been driving south on Highway 89, was attempting to make a left-hand turn. According to one eyewitness, Deller waited for approximately twelve seconds for the northbound traffic to clear. However, Deller did not see Gonda's vehicle, which was traveling north in the right-hand lane, and his Volkswagen was broadsided when he turned in front of the oncoming vehicle. Mindy died instantly, and Deller was knocked unconscious.

Child settled with Jesse Deller, his parents, and the Dellers' insurance carrier, American States Insurance, without consulting legal counsel. The settlement was for the total amount of the policy limits—$50,000. Thereafter, Child retained counsel and brought the instant action against Gonda in district court. The court granted Gonda's motion for summary judgment on the basis of a "broadform release" which purported to release, in addition to the Dellers and American States, "all other persons, firms and corporations." We reversed the lower court's grant of summary judgment and remanded the case for further proceedings in *Child v. Newsom*, 892 P.2d 9 (Utah 1995).[2]

Peter C. Collins, Salt Lake City, for plaintiff.

Donald J. Purser, Darci Dow, Salt Lake City, for defendant.

1. Child appeals only the district court's denial of his motion for a new trial.

2. Andria Newsom married after the accident. Both parties refer to her as "Ms. Gonda" in their

This case was then tried in November of 1995. Prior to trial, Child brought a motion in limine requesting the district court to preclude all references to the fact that Child had settled his claim against Deller. Gonda opposed that motion, seeking permission to notify the jury of the settlement. The court ruled that the jury was entitled to know that Child and Deller had "resolved their differences," that it would so inform the jury, and that counsel could not mention anything about the settlement.

Child also moved the court to issue an order precluding Gonda's witnesses from offering lay opinion testimony regarding the reasonableness of Gonda's driving conduct. The court denied that motion and allowed the witnesses to offer their opinion at trial to the effect that Gonda's driving conduct was reasonable.

At trial, Gonda's counsel in his opening statement suggested to the jury that Child was suing Gonda to "get paid some more money." Then, in his closing argument, counsel on several occasions referred to the fact that Child and Deller had resolved their differences.[3]

At the close of Child's case, the court granted Gonda's motion for a directed verdict on Deller's negligence and on the proximate cause connection between that negligence and Mindy's death. Before submitting the case to the jury, the court instructed the jury, over Child's exception, that violation of a safety law "may be" (rather than "is") evidence of negligence. The jury then answered the first question on the jury form, regarding Gonda's negligence, in the negative. It answered no further questions, and the district court entered judgment in Gonda's favor. Child then moved for partial judgment notwithstanding the verdict and for a new trial, which the court denied.

On appeal, Child argues that he is entitled to a new trial on the basis of any of the following individual or combined trial court errors: (1) allowing the jury to hear anything about the settlement with Deller; (2) refusing to promptly censure Gonda's counsel before the jury for flagrantly violating the court's pretrial order prohibiting references to the settlement—a violation which constituted an "irregularity in the proceedings"; (3) allowing Gonda's witnesses to testify regarding the reasonableness of Gonda's driving conduct; (4) granting Gonda's motion for a directed verdict on Deller's negligence and the proximate cause connection between that negligence and Mindy's death; and (5) instructing the jury that violation of a safety law "may be" (rather than "is") evidence of negligence. Child also claims that he is entitled to a new trial because the jury's verdict is not supported by the evidence or, alternatively, is "against law" pursuant to rule 59(a)(6) of the Utah Rules of Civil Procedure.

## STANDARD OF REVIEW

■ A district court has broad discretion in deciding whether to grant or deny a motion for a new trial. *See State v. Harmon,* 956 P.2d 262, 265–66 (Utah 1998); *State v. Pena,* 869 P.2d 932, 938 (Utah 1994). However, because Child raises several subissues involving different standards of review, we will set forth the proper standard as we address each issue.

## ANALYSIS

### I. JURY INSTRUCTION REGARDING RESOLUTION OF DIFFERENCES BETWEEN CHILD AND DELLER

■ The first issue is whether the district court[4] erred in instructing the jury that Child and Deller had "resolved their differences." Specifically, Child claims that rule 408 of the Utah Rules of Evidence proscribed any reference to the Child–Deller settlement. He further urges this court to expressly limit the rule of *Slusher v. Ospital,* 777 P.2d 437,

briefs. We refer to her as "Gonda" throughout this opinion.

**3.** Although Deller did not testify at the trial because he was out of the country, he claimed in his deposition that he could remember virtually nothing about the accident. His deposition had been videotaped and was played to the jury during the trial.

**4.** Because the district court presided over all phases of this case, including the trial, we use the terms "district court" and "trial court" interchangeably throughout this opinion.

444 (Utah 1989), where under the facts of that case, we allowed the disclosure to the jurors of the existence and basic content of a settlement agreement between the plaintiff and one of the named defendants. We review challenges to jury instructions under a "correctness" standard. *See Steffensen v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1346 (Utah 1993).

Rule 408 provides in relevant part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, *a valuable consideration* in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Utah R. Evid. 408 (emphasis added). The clear language of rule 408 indicates that the rule is very narrow: it only proscribes evidence regarding an offer or acceptance of "valuable consideration" in compromising a disputed claim.

In the instant case, the trial judge determined that the jury would wonder why Deller was not a defendant in the lawsuit. The judge therefore concluded:

I will advise the jury that in this case they will likely be asked to compare the responsibility for the accident of both the defendant and the driver of the vehicle in which the deceased was riding ... and that Mr. Deller is not a party to this lawsuit. *Mr. Child and Mr. Deller have resolved their differences and they needn't concern themselves about that fact.* They just need to concern themselves about the responsibility of the people who were involved, the drivers, period. That's all I'm going to tell them. And there's no reason to go any further than that in discussing the matter at all.

(Emphasis added.)

█ In light of the fact that the court did not notify the jury as to an offer or acceptance of any valuable consideration between Child and Deller, rule 408 does not even apply. Therefore, we hold that the court did not err in instructing the jury that they had resolved their differences. Because the court did not disclose the existence of the settlement agreement or its basic content, the rule set forth in *Slusher* likewise does not apply. We therefore decline Child's invitation to limit that rule.

## II. "IRREGULARITY IN THE PROCEEDINGS" REGARDING COUNSEL'S REFERENCES TO THE CHILD–DELLER SETTLEMENT

Child next argues that during opening and closing statements, Gonda's counsel flagrantly violated the district court's pretrial order prohibiting reference to the Child–Deller settlement. These violations, he maintains, constituted an "irregularity in the proceedings" entitling him to a new trial pursuant to rule 59(a)(1) of the Utah Rules of Civil Procedure, which provides that a new trial may be granted if, by reason of the irregularity, "either party was prevented from having a fair trial."

█ Because the grant of a new trial is ordinarily left to the sound discretion of the trial court, we will review the court's decision in this regard under an abuse of discretion standard. *See Rukavina v. Triatlantic Ventures, Inc.*, 931 P.2d 122, 126 (Utah 1997) (citing *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 804 (Utah 1991)); *Goddard v. Hickman*, 685 P.2d 530, 532 (Utah 1984) ("A trial court has broad latitude in granting or denying a motion for a new trial, and will not be overturned on appeal absent a clear abuse of discretion."). Moreover, we have stated that absent a showing by the appellant that the trial outcome would have differed, every reasonable presumption as to the validity of the verdict below must be taken as true upon appeal. *See Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982).

Child claims that Gonda's counsel made no fewer than three references to the Deller settlement during opening and closing argument. In particular, he asserts that Gonda's counsel, during his opening statement, referred to the settlement and then stated that Child was suing Gonda to "get paid more money."

Initially, we note that the record citations in Child's brief indicate that Gonda's counsel

during closing argument referred not to the settlement but to the fact that Child and Deller had resolved their differences. As we have already stated, such references do not even trigger rule 408's application because they do not constitute evidence of an offer or acceptance of "valuable consideration." Therefore, the only "irregularity" that may have occurred was counsel's remark during opening statement that Child was suing Gonda to get paid more money.

While we agree with Child that Gonda's counsel's remark violated the trial court's in limine order, Child has failed to present any compelling arguments that convince us that the offending remark denied him a fair trial. Indeed, Child asserts in his brief that "there is simply no way of knowing precisely what effect Ms. Gonda's counsel's remarks had on the jury." For this reason, we must give great deference to the trial court, which is in a much better position than this court to evaluate the parties' conduct, the context in which the irregularity occurred, and the jury's reaction to the statement.

In denying Child's motion for judgment notwithstanding the verdict, the trial court stated:

> The statements of defense counsel regarding settlement with the driver of the vehicle in which [Ms.] Child was riding at the time of the accident were not so prejudicial so as to require this Court to grant a new trial on that basis. This is particularly true in view of the curative instruction given by the Court at the conclusion of the evidence on that issue.[5]

While Child argues that "the instruction given by the District Court . . . was, contrary to Ms. Gonda's contention, not sufficient to cure her counsel's misconduct," he provides no reasons or support for his assertion. More-

over, instead of providing argument for the proposition that there is a reasonable likelihood that the trial outcome would have been different absent the error, Child merely asserts that "the only effective sanction for Ms. Gonda's counsel's direct and repeated violation of the District Court's ruling is to grant a new trial." Trial courts will not grant a new trial every time an error occurs, and neither will this court. *See* Utah R. Civ. P. 59(a) & 61. Therefore, in the absence of any compelling arguments to the contrary, we hold that the trial court did not abuse its discretion in denying Child a new trial on the basis of the irregularity in the proceedings.

## III. LAY OPINION TESTIMONY REGARDING THE REASONABLENESS OF GONDA'S DRIVING CONDUCT

Child next argues that the district court committed reversible error in allowing, over Child's objection, lay witnesses to give opinion testimony regarding the supposed reasonableness of Gonda's driving conduct. However, we decline to address his argument because Child has failed to adequately brief the issue. *See State v. Thomas,* 961 P.2d 299, 304–05 (Utah 1998).

Child's brief does not contain the witnesses' testimony regarding Gonda's driving conduct or any record citations to their testimony. Our rules of appellate procedure require that the argument in the appellant's brief "contain the contentions and reasons of the appellant with respect to the issues presented . . . *with citations to the authorities, statutes and parts of the record relied on.*" Utah R.App. P. 24(a)(9) (emphasis added). As we have stated, this court is not " 'a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl,*

---

5. The jury instruction regarding the error reads: As has previously been mentioned, Mr. Child and Jesse Deller have resolved whatever differences they may have had over the death of Melinda Child. The law encourages resolution of disputes, and there was nothing improper or inappropriate about Mr. Child resolving whatever differences he may have had with Jesse Deller prior to the time this lawsuit was initiated.

In your deliberation in this case, you are not to concern yourself with the question of whether Mr. Child received funds from any source in connection with the role that Jesse Deller played in the collision in question. Your sole job is to concern yourself with the questions involving responsibility for the collision and the resultant death of Melinda Child, and the amount of the damages suffered by Mr. Child as a result of his daughter's death.

92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (Ill.App.Ct.1981)).

Our decisions often turn on subtleties and nuances of fact and law. Therefore, it is not enough that Child asserts that several witnesses testified "to the effect that, in their opinion, Ms. Gonda's driving was reasonable in the circumstances." To adequately address the trial court's decision to admit such testimony, we must be provided the testimony that was admitted, with citations to the record so that we may evaluate the testimony in its context. Because Child's brief is wholly inadequate in this regard, we do not address this issue.

## IV. DIRECTED VERDICT REGARDING DELLER'S NEGLIGENCE

■ Child next argues that the district court erred in granting Gonda's motion for a directed verdict that Deller was negligent and that his negligence was a proximate cause of Mindy's death. "We reverse a directed verdict when the evidence, taken in a light most favorable to the nonmoving party, is sufficient to permit a reasonable jury to find for the nonmovant." *Nay v. General Motors Corp.*, 850 P.2d 1260, 1263 (Utah 1993) (citations omitted).

■ Child argues that the evidence presented at trial was sufficient for reasonable jurors to have concluded that Deller was not negligent. Specifically, he refers to the following evidence in support of his argument: (1) Deller waited at the intersection for approximately 12 seconds before turning into Gonda's path; (2) it was raining; (3) Gonda did not have her lights on; (4) the driver of the vehicle following Gonda testified that she (the driver) probably had her lights on; and (5) an expert witness testified that the vehicle following Gonda's may have created a "haloing" effect, making it difficult for Gonda's vehicle to be seen.

In granting the directed verdict motion, the trial judge stated:

There is nothing in this record that would support any conclusion other than Mr. Deller did not see what was there to be seen . . . .

I intend to instruct this jury that they are to consider the conduct of Mr. Deller [and Ms. Gonda], and if they find both of them responsible in any degree, then they are to compare those two, the respective conduct, and give me a percentage, and based upon that, I will determine whether or not there will be an award for the plaintiff. . . . But clearly, Mr. Deller, in pulling out in front of an immediate hazard, there to be seen, there isn't one . . . shred of evidence that would support anything other than failure to be seen. . . . I understand this haloing effect, but that's not going to get over that hurdle.

We agree with the trial court. While the evidence Child offers may help to explain his actions, it does not show that Deller was not negligent. Therefore, even if the trial court had considered all of the evidence Child presented as uncontroverted fact, Child offered no evidence that would convince any reasonable jury that Deller was not negligent.

■ Nevertheless, even if the court erred in granting Gonda's directed verdict motion, Child admits in his brief that the court's determination in this regard "did not likely constitute reversible error." As we have stated, we will not reverse a judgment merely because there may have been error; reversal occurs only if the error is such that there is a reasonable likelihood that, in its absence, there would have been a result more favorable to the complaining party. *See Lee v. Mitchell Funeral Home Ambulance Serv.*, 606 P.2d 259, 261 (Utah 1980). In light of the fact that Child has not even attempted to meet this burden, we cannot grant him a new trial on the basis of the court's alleged error.

## V. JURY INSTRUCTION REGARDING VIOLATION OF SAFETY LAW

Child next argues that the court committed reversible error in instructing the jury that a violation of a safety law "may be," as opposed to "is," evidence of negligence. A court's jury instructions are legal determinations, which we will review for correctness. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 452 (Utah 1993).

The safety statute to which Child refers requires drivers to use automobile headlights under certain conditions and is essentially embodied in jury instruction 31, which reads:

The traffic laws of the State of Utah [provide] that every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1,000 feet ahead, shall use headlights.

The court further instructed the jury that "[v]iolation of a safety law may be evidence of negligence."

According to Child, under *Gaw v. State*, 798 P.2d 1130, 1135 (Utah Ct.App.1990), violation of a safety law *is* evidence of negligence. Child thus asserts in his brief:

The District Court was apparently confused, thinking that its statement that a violation of the law in question was *evidence* of negligence would be tantamount to a statement that it was negligence.... The "may be" evidence of negligence standard, settled upon by the District Court is simply too vague, is contrary to settled Utah law, and does not let the jury know that violation of a safety law *is* evidence of negligence, even if the jury decides that it does not, standing alone, constitute negligence.

■■■ The above-quoted passage from Child's brief clearly indicates that the real issue has eluded him. The issue in *Gaw* was whether violation of a statute or an ordinance constitutes "per se" negligence or "prima facie" evidence of negligence. *Gaw*, 798 P.2d at 1134–35. Negligence per se, which usually results from the violation of a statute, is defined as "[c]onduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances ...." *Black's Law Dictionary* 1035 (6th ed.1990). In contrast, prima facie evidence is "[t]hat quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence; once a trier of fact is faced with conflicting evidence,

it must weigh the prima facie evidence with all of the other probative evidence presented." *Id.* at 1190. Therefore, prima facie evidence of negligence is evidence which would be sufficient to submit the question of negligence to the jury and support a verdict of negligence. However, such evidence would not require the jury to return such a verdict.

■■■ To illustrate, a driver who reasonably increases his speed in an attempt to avoid being rear-ended by a runaway truck on a canyon road is not negligent per se, even though by increasing his speed he has violated the speed limit statute. In fact, a failure to reasonably increase speed to avoid an accident under such circumstances may itself constitute evidence of negligence. Nevertheless, whether the statute was violated and whether such violation constitutes evidence of negligence is for the jury to determine. As we have previously stated, "[T]he violation of a statute does not necessarily constitute negligence per se and *may be* considered only as evidence of negligence .... [The violation] *may be* regarded as 'prima facie evidence of negligence, but is subject to justification or excuse if the evidence is such that it reasonably could be found.'" *Intermountain Farmers Ass'n v. Fitzgerald*, 574 P.2d 1162, 1164–65 (Utah 1978) (emphasis added) (quoting *Thompson v. Ford Motor Co.*, 16 Utah 2d 30, 33–34, 395 P.2d 62, 64 (1964)); *see also Dixon v. Stewart*, 658 P.2d 591, 600–01 (Utah 1982) ("Although the provisions of the negligent homicide statute scarcely seem to qualify as a 'safety standard,' the same principle should apply, namely, that criminal culpability generally constitutes only evidence of negligence in a civil action, rather than negligence per se as a matter of law.").

■■ In the instant case, the trial court instructed the jury that violation of the automobile headlight statute "may be" evidence of negligence. While the court did not use the term "prima facie," use of that term was unnecessary because the court adequately instructed the jury that if it determined that Gonda violated the headlight statute, it could find—but was not required to find—that she

was negligent. If the court's instruction was prejudicial in any way, it was prejudicial to Gonda, because it did not notify the jury that her alleged violation was subject to justification or excuse. We therefore hold that the trial court did not commit error that prejudiced Child in any way when it instructed the jury that violation of a safety law "may be" evidence of negligence.

## VI. INSUFFICIENCY OF THE EVIDENCE AND/OR VERDICT WAS "AGAINST LAW"

Child's final argument is that this court should grant a new trial pursuant to rule 59(a)(6) of the Utah Rules of Civil Procedure, because the evidence was not sufficient to support the jury's verdict that Gonda was not negligent or, alternatively, because the verdict was "against law"—i.e., the law set forth in the jury instructions. Rule 59(a) gives the trial court discretion to grant a new trial on a number of grounds, including "[i]nsufficiency of the evidence to justify the verdict or other decision, or that it is against law." Utah R. Civ. P. 59(a)(6).

■■■ Our standard of review on this issue has been stated as follows:

> Where the trial court has *denied* the motion for a new trial, its decision will be sustained on appeal if there was "an evidentiary basis for the jury's decision ...." The trial court's denial of a motion for a new trial will be reversed *only if "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust."*

*Nelson v. Trujillo,* 657 P.2d 730, 732 (Utah 1982) (second emphasis added) (quoting *McCloud v. Baum,* 569 P.2d 1125, 1127 (Utah 1977)). To support an insufficiency of the evidence claim on appeal, "the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *McCorvey v. State Dep't of Transp.,* 868 P.2d 41, 44 (Utah 1993) (quoting *Crookston,* 817 P.2d at 799). However, with this in mind, we emphasize that " '[i]t is the exclusive function

of the jury to weigh the evidence and to determine the credibility of the witnesses.' " *State v. Booker,* 709 P.2d 342, 345 (Utah 1985) (quoting *State v. Lamm,* 606 P.2d 229, 231 (Utah 1980)). So long as some evidence and reasonable inferences support the jury's findings, we will not disturb them. *See id.*

■■■ The evidence that Child marshals in support of the jury's verdict may be summarized as follows: Gonda testified that she remembers slamming on her brakes when she saw the Volkswagen immediately in front of her and that she was probably traveling between 50 and 55 miles per hour because she always travels the speed limit in rainy weather. Gonda's passenger testified that it was daylight at the time of the collision, that he observed no activity on the part of Deller's vehicle that caused him to think it might enter the roadway, and that there was no alternative Gonda could have taken to avoid the collision. The driver of the vehicle following Gonda testified that she (the driver) didn't have time to put her brakes on until Deller's vehicle was "right there" and that she thought Deller's vehicle, as soon as it started to move, would be hit by Gonda's vehicle because there was not "enough room for anybody to do anything." The driver heading north on Highway 89, who was in the left turn lane just opposite Deller, testified that it was daylight at the time of the collision, that in his judgment there was no need for automobile lights to be on at the time the collision occurred, and that Deller's turning movement was very abrupt and very quick. Finally, Child's expert witness testified that Gonda had between two and three seconds to react in order to avoid the collision, and Gonda's expert witness testified that Gonda had nowhere to go between the time Deller's vehicle started moving and the time of the collision and that there was no time for Gonda to brake prior to the collision.

■■■ Notwithstanding this evidence, Child asserts that the jury rejected the "overwhelming weight of the direct and circumstantial evidence" presented concerning Gonda's negligence. He then attempts to demonstrate the insufficiency of the evidence in favor of the jury's verdict by marshaling all of the evidence that he maintains is

**434**

against the verdict. His approach, however, fails for two reasons. First, as we have previously stated, it is the exclusive function of the jury to weigh the evidence and determine the credibility of the witnesses. Child ignores this principle, because he asks this court in his brief to "[weigh the evidence in support of the jury's verdict] against the avalanche of evidence [against the verdict]" and conclude that the jury was wrong in finding that Gonda was not negligent. This court does not, and will not, reweigh the evidence and determine where it preponderates.[6]

■ Second, in challenging the jury's verdict, Child has failed to fully comply with our marshaling requirement. While setting forth a great deal of evidence, he has so slanted it in his favor that in many instances he has inaccurately represented the record. For instance, he states that the evidence showed that Gonda was not wearing her eye glasses at the time of the accident and that at the time her deposition was taken a year later, her driver's license required her to wear glasses. However, he fails to state that the evidence also showed that (1) her glasses had been prescribed only for reading; (2) her visual acuity without corrective lenses was 20/25 in one eye and 20/30 in the other; and (3) her license had the eye glass restriction on it simply because she had worn her glasses when she took her driver's license test, but she later obtained a new license that does not require her to wear glasses. Moreover, Child fails to indicate that the court instructed the jury that Utah law requires drivers of private vehicles to have uncorrected visual acuity of at least 20/40. The jury therefore could have rejected any implication that Gonda was negligent in not wearing glasses at the time the accident occurred.

Child also cites Gonda's testimony that she did not know the direction she was traveling at the time of the accident, the path she had driven prior to the accident, or where she was going. However, Child fails to cite the evidence from the record indicating that Gon-

da did not know the direction "on a compass" in which she was traveling, that she could not remember the path she had driven from her friend's house in Kearns, Utah, to the accident site, and that she did not know where she was going because she was taking her friend on an errand to pick up a part from a business and he had been giving her instructions on how to get there.

■ It is an absolute requirement of marshaling that the party state *fully and accurately* all of the evidence on an issue and then show, as a matter of law, that the evidence does not support the verdict. Child has failed to meet this requirement. Moreover, the "avalanche of evidence" that Child has marshaled against the verdict raises questions of weight and credibility, which are matters within the exclusive province of the jury. Because Child has failed to meet his burden of showing that the evidence supporting the verdict was completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust, we reject Child's argument that the evidence was insufficient to support the jury's verdict.

As a final issue, Child argues that the jury's verdict was "against law"—i.e., against the law set forth in the jury instructions. Specifically, Child cites to the law set forth in the following jury instructions regarding a driver's duty to (1) exercise reasonable care at all times to avoid placing others in danger; (2) observe others using the road; (3) keep a proper lookout; and (4) refrain from heedlessly relying on the right-of-way.

However, even if Child's evidence may have created an inference that Gonda violated one or more of the aforementioned duties, when we view the evidence in the light most favorable to Gonda, we are satisfied that the evidence was clearly sufficient to support the jury's verdict that Gonda was not negligent. Therefore, we hold that the jury's verdict was not "against law" as Child claims.

6. For example, if nine eyewitnesses testify that the stop light was red and one eyewitness testifies that it was green, the jury may choose to believe the one eyewitness. The fact that the jury chose to believe the one instead of the nine is not enough to establish that the verdict was " 'completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " *Nelson,* 657 P.2d at 732 (quoting *McCloud,* 569 P.2d at 1127).

## CONCLUSION

In light of the foregoing, we hold that because Child is not entitled to a new trial, the district court did not abuse its discretion in denying Child's motion for a new trial.

Judgment affirmed.

Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON'S opinion.