**2024 UT App 177**

# THE UTAH COURT OF APPEALS

RUSS MADSEN, MANDY MADSEN, ANGIE WALL, SOFIA BOWERS, AND
MICHAEL BOWERS,
Appellees,
*v.*
BEACON ROOFING SUPPLY, BEACON SALES ACQUISITION INC., AND
RUSTY CADE COPE,
Appellants.

Opinion
No. 20230392-CA
Filed December 5, 2024

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 190401592

Ruth A. Shapiro, Dani N. Cepernich, Bryson R.
Brown, Tracy H. Fowler, Elisabeth M. McOmber, and
Ryan S. Alba, Attorneys for Appellants

Blake W. Johnson, Attorney for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1　After viewing a movie at a local theater, three boys congregated near a busy intersection as they waited for a walk signal to enter the crosswalk. Michael, age eleven, walked in front of the others toward the crosswalk, hesitated a moment at the curb, and proceeded into the marked crosswalk with the pedestrian signal illuminated. Michael apparently did not see a large commercial truck turning right, nor did the driver of the truck appreciate Michael's presence, and several feet into the crosswalk Michael was hit and killed.

¶2     Michael's parents, along with the parents of the other boys, (collectively, the Parents) brought an action for wrongful death and related claims. In a bifurcated trial, a jury determined that the truck driver was not at fault. Following the verdict, the Parents filed a renewed motion for judgment as a matter of law. The district court granted the motion and conditionally granted a new trial. The driver, Rusty Cade Cope, and his employer, Beacon Roofing Supply, petitioned for permission to appeal, which we granted.[1] For the reasons identified below, we affirm the district court's rulings.

BACKGROUND

*The Accident*

¶3     On December 17, 2018, Michael went to an afternoon movie with two friends in Pleasant Grove, Utah. After the movie, at around 6:00 p.m., they left the theater, crossed a road, and stood near the corner at the intersection of Pleasant Grove Boulevard and State Street. Once there, the boys pressed the pedestrian crossing button three times as they waited for the "Walk" signal to activate so they could make their way across Pleasant Grove Boulevard.

¶4     Meanwhile, Cope, who had a passenger with him, was driving a large commercial roofing truck toward the intersection of Pleasant Grove Boulevard and State Street where the boys were waiting. Cope maneuvered his vehicle into the right-hand turn

---

1. For simplicity, we will refer to the employer and the driver as "Cope" when describing the procedural history of this case. Beacon Sales Acquisition Inc. is legally affiliated with Beacon Roofing Supply and was joined as a defendant in the early stages of this litigation.

lane on State Street as he prepared to turn onto Pleasant Grove Boulevard.

¶5 The traffic signal at the intersection had turned green by the time Cope reached Pleasant Grove Boulevard. And at the same time the traffic signal had turned green, the "Walk" signal had illuminated. When the "Walk" signal illuminated, Michael, who was at the corner, proceeded into the crosswalk. Cope, who had been slowing because the light had been red, proceeded to make a right-hand turn without stopping, traveling at about eleven miles per hour. As Cope rounded the corner, his vehicle struck and killed Michael. Michael was approximately fifteen feet into the crosswalk when he was hit.

### The Trial

¶6 The Parents brought a wrongful death and personal injury case against Cope, asserting various claims sounding in negligence. The jury trial was bifurcated, with the first phase addressing only whether the breach of any duties caused Michael's death. The second phase would address the remaining issues, most notably the allocation of fault and damages.

¶7 The Parents presented evidence from two eyewitnesses who were stopped at the intersection at the time of the accident. One of these eyewitnesses testified that he noticed "three boys on the corner . . . waiting to cross the street." He said the boys "seemed . . . on high alert about what they were doing"—as indicated by their "pacing, movement, lots of stepping and head turning, swiveling, [and] looking different directions." He further testified that Cope was braking because the light had been red as he approached the intersection, but that the light turned green before Cope stopped, at which point Cope continued making the right-hand turn, striking Michael. This eyewitness further stated that the "Walk" symbol for the boys had illuminated at the same time the light had turned green for Cope. The other eyewitness said Michael was standing by the light post, "moving around,"

"jumping up and down," "hitting the button," and "obviously, waiting . . . for the light to come on so he could cross." He also testified that Cope made the turn without stopping.

¶8 The Parents also called several experts. They first called a mechanical engineer. He testified that the "Walk" symbol illuminated for the boys at the same time the light changed from red to green for Cope. Another expert, a forensic engineer, testified that the light had turned green 5.5 seconds before the impact occurred. He further testified that "one or more of the boys was visible and detectable as a pedestrian moving toward the crosswalk" for 10.6 seconds prior to impact. The forensic engineer also testified about the lighting on the corner where the boys were standing. He concluded that the illumination was "so far above the threshold needed for the detection of pedestrians that even a darkly clothed pedestrian would have been easily detectable and visible to a driver approaching . . . that intersection in that area."

¶9 Cope testified that the light was red but it changed to green as he approached the intersection. Cope admitted that he had told police officers immediately after the accident that he had come to a complete stop because the light had been red, that he looked right and left to verify that it was safe to turn, and that only then did he make the turn. But he testified on the stand that he only "thought [he] had" come to complete a stop and that "[a]fter the fact, [he] had come to find out that [he] did not stop." In retrospect, Cope admitted, "The color of the light was red as I approached. It changed to green. I did think I came to a stop that night. And I tried to be as truthful as I could on that."

¶10 Cope further testified that in spite of keeping "a continual scan . . . through the turn," he "never saw anybody on the street corner" where the boys were standing. He was aware, however, that there was a crosswalk painted on the road for pedestrian use. He testified that he did not see the illuminated "Walk" signal because he did not look for it.

¶11　Cope also presented a mechanical engineer to testify as an expert. Cope's expert agreed that it was "probably true" that the "Walk" signal illuminated for Michael at the same time the light had turned green. This expert also provided several explanations for Cope's failure to see the boys, including that it was dark, that the turn was made at a complicated intersection with a lot of "clutter," that the turn involved a large truck in a tight lane, that there were other bright lights at the intersection, that the movement of the truck impeded visibility, and that the physical characteristics (namely, a large mirror, the hood, the roof supports, and the window frame) of the truck interfered with Cope's line of sight to create "blind spots."

¶12　The jury also saw two videos of the accident and the events leading up to it captured by surveillance cameras from two nearby businesses.

¶13　After the close of evidence, the Parents moved for judgment as a matter of law under rule 50 of the Utah Rules of Civil Procedure as to whether Cope breached his duty of care toward Michael. Cope opposed the motion, and the district court reserved ruling on it pursuant to rule 50(b). The jury returned a verdict in favor of Cope, finding that he did not negligently operate the vehicle.

*Judgment as a Matter of Law*

¶14　Following the verdict, the Parents filed a renewed motion for judgment as a matter of law and a motion for a new trial. Specifically, the Parents argued,

> The evidence presented at trial demonstrably show[ed] that Cope violated numerous duties and traffic safety laws. [Cope] provided no evidence to rebut the significant amount of evidence that the boys were there to be seen. [Cope] only offered evidence that it was more difficult for Cope to see

the boys, which does not excuse his violation to keep a proper lookout, yield to pedestrians, and turn only when it could be done safely.

Accordingly, the Parents, pursuant to rule 50(b) of the Utah Rules of Civil Procedure, requested judgment as a matter of law on the issue of Cope's negligence. *See* Utah R. Civ. P 50(b). The Parents also requested a new trial, asserting that the verdict was based on insufficient evidence or contrary to law. *See id.* R. 59(a)(6)–(7). Cope opposed the Parents' motion for judgment as a matter of law, arguing that substantial evidence showed that the Parents failed to meet their burden of showing that Cope failed to keep a proper lookout, drove too fast, failed to yield, or failed to exercise reasonable care under the circumstances. Cope also argued that there were no irregularities to justify a new trial.

¶15    The district court granted the Parents' motion, determining that "the evidence wholly contradict[ed] the verdict" and that no "facts adduced at trial support[ed] the verdict the jury reached." The court devoted a great deal of effort—twenty-four pages—to recounting the facts of the case and applying the law to them. In reviewing the evidentiary background, the court noted that undisputed evidence indicated that the "Walk" signal was illuminated when Michael entered the crosswalk and that Cope did not see Michael or the other boys at any point while they were waiting to cross. The court noted, however, that "Cope's failure to see the boys" contrasted "with the ability of other individuals" who were stopped at the intersection to observe the boys. The court also acknowledged that the evidence indicated that there were "variables" and "complexities" typical of a "busy intersection" that Cope needed to safely address. These included the narrowness of the right-turn lane relative to the width of his truck, the possible presence of pedestrians, and the tightness of the turn. The court also recognized that the evidence indicated that while the intersection was well lit, other factors, such as the presence of additional lights, may have "added clutter and confusion to the intersection." The court further noted the

undisputed evidence that the traffic light turned green for Cope 5.5 seconds before the collision occurred. But during that time after the light turned green, the court observed the evidence indicated "Cope decided to take the turn without stopping" by letting his foot off the brake. It was during this brief period that Cope's "window for noticing Michael's presence and stopping before the accident would close."

¶16    In ruling on the Parents' motion, the district court concluded that if conditions that night made it difficult for Cope to see pedestrians, then his decision not to slow down to allow for the opportunity to properly evaluate the situation violated his duty of care. In sum, the court determined, as a matter of law, that Cope breached the duty of care he owed Michael in the following five ways:

1.  He "operated his vehicle at a speed greater than what was reasonable and prudent under the existing conditions, including when approaching and crossing an intersection, because his speed allowed him too short a time to notice and respond to Michael's presence;"

2.  He "turned his vehicle before it could be done with reasonable safety because Michael was given a 'Walk' signal at the same time [Cope] was given a green traffic signal, but he failed to yield to Michael when Michael entered the intersection within a reasonable time after the 'Walk' signal illuminated;"

3.  He "failed to keep a proper lookout by failing to see either the 'Walk' signal or any of the three boys approaching the crosswalk;"

4.  He "failed to yield the right-of-way, by slowing down or stopping if necessary, to a pedestrian crossing the roadway within a crosswalk when the pedestrian was on the half of the roadway upon which his vehicle was traveling;" and

5. He "failed to exercise reasonable care by failing to slow down sufficiently before the intersection and by failing to wait to proceed into it until after he had performed all of the foregoing duties, including observing the 'Walk' signal and the pedestrians, and by failing to check the areas in his vehicle's blind spots."

¶17     And in compliance with the Utah Rules of Civil Procedure, the district court conditionally granted the Parents' motion for a new trial.[2]

## ISSUE AND STANDARD OF REVIEW

¶18     Cope argues that the district court erred in granting the Parents' renewed motion for judgment as a matter of law. We review a motion for judgment as a matter of law for correctness and "accept as true all testimony and reasonable inferences that support the jury's verdict." *Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶ 38, 513 P.3d 729 (cleaned up).[3]

---

2. Rule 50(c)(1) of the Utah Rules of the Civil Procedure states, "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." "Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment [as a matter of law] is reversed, the new trial must proceed unless the appellate court orders otherwise." Utah R. Civ. P. 50(c)(2).

3. Cope also asserts that the district court abused its discretion in conditionally granting a new trial on the basis that the verdict was contrary to law and the evidence was insufficient to justify the verdict. Our conclusion that the district court did not err in

(continued…)

ANALYSIS

¶19    At the outset, it's essential to keep in mind that this trial was bifurcated, with the sole question during the first phase of the trial being whether Cope was negligent. Thus, if the evidence showed that Cope was negligent to any degree—even if his negligence was slight—the jury should have returned a verdict against him and the trial should have proceeded to the second phase, where the apportionment of fault would occur. With this procedural posture in mind, we conclude that the district court correctly granted the Parents' motion for judgment as a matter of law because the evidence and Utah law compel the conclusion that Cope was negligent. In short, there was abundant evidence presented to support the conclusion that, as a matter of law, Cope breached—at least to some degree—the duty of care he owed as a driver to Michael as a pedestrian and that this breach resulted in Michael's death. In reaching this conclusion, we in no way depart from the longstanding deference owed to a jury's verdict. *Snyderville Transp. Co. v. Christiansen*, 609 P.2d 939, 942 (Utah 1980) ("[T]he decisions reached by a jury, acting as sole finder of fact, are to be accorded due deference by a reviewing Court."); *Wilson v. Sanders*, 2019 UT App 126, ¶ 23, 447 P.3d 1240 (stating that a "healthy dose of deference" is "owed to jury verdicts" (cleaned up)). But this deference, though well-established, is not sacrosanct; it must yield when, as here, "reasonable minds would not differ on the facts to be determined from the evidence presented." *Heslop v. Bank of Utah*, 839 P.2d 828, 838 (Utah 1992). As our supreme court pronounced long ago, "[W]e must review cases in the light of the legal principles we espouse and discard reverence for [the jury] where we are convinced it has erred. Here, we believe, is a case where that rather rare occasion must be met with reversal and without equivocation." *Martin v. Ehlers*, 371 P.2d 851, 852 (Utah 1962).

---

granting the Parents' motion for judgment as a matter of law obviates the need to address the conditional grant of a new trial.

¶20    In negligence cases, a duty is "defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, ¶ 10, 514 P.3d 1209 (cleaned up). And "the existence of a duty must be determined as a matter of law and on a categorical basis for a given class of tort claims." *Id.* (cleaned up). For the driver of a vehicle, there is an overarching duty of care that encompasses seeing what there is to be seen—as recognized in *Child v. Gonda*, 972 P.2d 425 (Utah 1998). In that case, a passenger was in a vehicle driven by her friend. *Id.* at 427. The friend turned left in front of oncoming traffic, resulting in the passenger's death. *Id.* After settling with the friend, the passenger's estate sued the other driver, Gonda. *Id.* At trial, the estate presented evidence that Gonda was negligent, including that (1) the friend had "waited at the intersection for approximately 12 seconds before turning into Gonda's path; (2) it was raining; (3) Gonda did not have her lights on; (4) the driver of the vehicle following Gonda testified that she [i.e., the driver following Gonda] probably had her lights on; and (5) an expert witness testified that the vehicle following Gonda's may have created a 'haloing' effect, making it difficult for Gonda's vehicle to be seen." *Id.* at 431. The trial court granted a directed verdict in favor of Gonda, stating, "There is nothing in this record that would support any conclusion other than [the friend] did not see what was there to be seen." *Id.* (cleaned up). The court noted that even though the "haloing effect" would have impeded visibility, it still did not "get over" the "hurdle" of the friend's failure to see an "immediate hazard" that was "there to be seen." *Id.* (cleaned up). On appeal, our supreme court agreed with the trial court: "While the evidence [the estate] offers may help to explain [the friend's] actions, it does not show that [the friend] was not negligent. Therefore, even if the trial court had considered all of the evidence [the estate] presented as uncontroverted fact, [the estate] offered no evidence that would convince any reasonable jury that [the friend] was not negligent." *Id.*

¶21 An older case from our supreme court, *Charvoz v. Cottrell*, 361 P.2d 516 (Utah 1961), helps illustrate the duty of care that a driver has to keep a proper lookout in the context of yielding to a pedestrian in a crosswalk. In *Charvoz*, a pedestrian was struck and killed in an intersection crosswalk at around 7:00 p.m. when it was dark. *Id.* at 517. While the crosswalk was well marked, the intersection was dimly lit and the pedestrian was wearing dark clothing. *Id.* at 517–18. The driver testified that he was traveling approximately thirty miles per hour with his headlights on low beam as he approached the intersection, but that he did not see the pedestrian until he was about sixty-five feet from the point of impact. *Id.* He immediately applied his brakes but was unable to stop in time. *Id.* The jury returned a verdict of no cause of action in favor of the driver. *Id.* at 517. The pedestrian's estate appealed, arguing that the driver was negligent, as a matter of law, "in failing to keep a proper lookout and in failing to yield the right of way" to the pedestrian. *Id.* at 517–18.

¶22 Our supreme court affirmed the verdict, concluding that "the lower court properly refused to give the requested instruction that the [driver] was negligent as a matter of law." *Id.* at 519. The court noted, "It is well settled that statutes or ordinances giving pedestrians the right of way at street crossings create a preferential but not an absolute right in their favor." *Id.* And it clarified, "Before the duty of a driver to yield the right of way arises he must be in a situation whereby he is *either aware* of the presence of a pedestrian within the crosswalk or *should have, in the exercise of reasonable care, become aware* of the pedestrian's presence in time to yield the right of way." *Id.* (emphasis added). Thus, as articulated in *Charvoz*, two conditions are necessary to conclude, as a matter of law, that a driver is negligent in failing to yield: (1) the driver must have been or should have been aware of the hazard and (2) the driver had time to avoid the collision. *Id.*

¶23 *Charvoz* reiterated the standard articulated in *Martin v. Stevens*, 243 P.2d 747 (Utah 1952). In that case, a driver crashed into the side of the plaintiff's car. *Id.* at 748. The driver moved for

dismissal, arguing that the plaintiff was guilty of contributory negligence. *Id.* After the motion was granted, the plaintiff appealed. *Id.* On appeal, arguing under the old system of contributory negligence, the driver asserted "virtually that no matter how negligent" he may have been, it was "still the plaintiff's duty to avoid the collision." *Id.* at 749. Our supreme court called this assertion "fallacious" because it stretched "contributory negligence to the point where we make it incumbent upon one not only to drive carefully himself, but to drive so carefully as always to be prepared for some sudden burst of negligence of another and be able to avoid it." *Id.* at 750 (cleaned up). The court observed that the rule the driver advocated "would throw a protective cloak over wrongdoers and penalize careful drivers by requiring them to anticipate and avoid the negligence of others." *Id.* Instead, the court articulated that to be "held to be negligent as a matter of law," a driver must have "either observed, or in the exercise of due care *should have observed*, the manner in which the other driver was approaching the intersection and clearly could by ordinary reasonable care have avoided the collision." *Id.* at 751 (emphasis added); *see also Johnson v. Syme*, 313 P.2d 468, 469 (Utah 1957) (stating that where the decedent's approaching car was readily visible to others, the "plaintiff either *looked and failed to see the obvious, or failed to look at all*, and, as a matter of law negligently contributed to her own injuries and the death of another motorist" (emphasis added)).

¶24 Moreover, Utah statutory law imposes additional obligations on drivers:

- Drivers "may not operate a vehicle at a speed greater than is reasonable and prudent under the existing conditions, giving regard to the actual and potential hazards then existing, including when . . . approaching and crossing an intersection [and] traveling in, through, or approaching other hazards that exist due to pedestrians, other traffic, weather, or highway conditions." Utah Code § 41-6a-601(1)(a), (e).

- A driver "may not turn a vehicle . . . until . . . the movement can be made with reasonable safety." *Id.* § 41-6a-804(1)(a)(i).

- Drivers must "yield the right-of-way by slowing down or stopping if necessary . . . to a pedestrian crossing the roadway within a crosswalk when the pedestrian is on the half of the roadway upon which the vehicle is traveling." *Id.* § 41-6a-1002(1)(a)(i). And "a pedestrian facing a steady 'Walk' or symbol of 'Walking Person' of a pedestrian traffic-control signal has the right-of-way and may proceed across the roadway in the direction of the signal." *Id.* § 41-6a-306(1).

¶25 Applying this precedent and statutory law, the question is whether the undisputed facts establish (1) that Cope was aware of or should have been aware of—in the exercise of ordinary and reasonable care—the presence of the boys waiting to cross at the corner and (2) whether Cope had time to avoid the collision under the circumstances such that judgment can be made as a matter of law.

¶26 First, the undisputed facts make clear that Cope should have been aware of the boys' presence at the corner. Cope points to *Charvoz* as supporting his argument that he was under no obligation to see the boys because, like the pedestrian in *Charvoz*, he argues that they were not "there to be seen." But Cope's reliance on *Charvoz* begs the question on this point. The reason Cope did not see the boys isn't that they were not there to be seen; instead, it's that Cope didn't pay attention to the signs of their presence or take the time to look for them, as a driver exercising reasonable care would have done. *Charvoz* clearly states that a driver's duty of care to yield to a pedestrian in a crosswalk arises when the driver becomes aware or should have become aware of the pedestrian's presence in time to stop. *See* 361 P.2d at 519 ("Before the duty of a driver to yield the right of way arises he must be in a situation whereby he is *either aware* of the presence of

a pedestrian within the crosswalk or *should have, in the exercise of reasonable care, become aware* of the pedestrian's presence in time to yield the right of way." (emphasis added)). In a departure from *Charvoz*, Cope employs circular reasoning to assert that the boys were not "there to be seen" because *he did not see them*. This faulty logic will not do—it is inconsistent with the principle laid down in *Charvoz* that the duty of care to yield to a pedestrian arises when an operator *should have* become aware of the pedestrian's presence.

¶27 The evidence here is that Cope, in the exercise of reasonable care, should have been aware of the boys' presence as they waited to cross the street. The circumstances in *Charvoz*— where the supreme court concluded that the pedestrian was not visible in time to avoid the collision—are distinguishable from those Cope encountered. The crosswalk in *Charvoz* was on a straightaway rather than on a busy adjacent road regulated by traffic signals. There was no illuminated "Walk" signal at play in *Charvoz*. Moreover, it is undisputed that the light was red as Cope approached the intersection. The traffic signal, along with the "Walk" signal, changed approximately 5.5 seconds before Cope reached the crosswalk. During that time, Michael—as shown in the surveillance videos—was standing on the corner where pedestrians waiting for the "Walk" signal are expected to be. This is an example of the kind of situation *Charvoz* indicated "should have" made a driver "become aware of the pedestrian's presence in time to yield the right of way." *Id.* Indeed, Cope, in the exercise of reasonable care, should have been on heightened alert that the traffic light, having just changed, might mean that pedestrians would begin crossing the adjacent street onto which he was turning.

¶28 We note that (1) the limitation of visibility due to the complex and cluttered nature of the intersection, (2) the blind spots created by the configuration of Cope's vehicle, (3) the fact that it was dark, or (4) the difficulty of turning a large truck in a tight lane does not create a situation that eliminates or mitigates

Cope's duty of care. Instead of establishing non-negligence, these are circumstances that Cope should have considered as prudentially limiting the speed with which he could make the turn under the existing conditions so as to ensure that the maneuver could be accomplished with reasonable safety and with the proper lookout for potential pedestrians. *See* Utah Code §§ 41-6a-804(1)(a)(i), -1002(1)(a)(i). Rather than excusing Cope's responsibility, these circumstances enhanced his duty of care to make a safe turn.

¶29 Second, Cope—if he had exercised the reasonable care by which he should have become aware of the boys' presence—would have almost certainly avoided the collision that killed Michael. If Cope had observed his duty of care to operate his vehicle at a speed that was "reasonable and prudent under the existing conditions, giving regard to the actual and potential hazards then existing, including when . . . approaching and crossing an intersection [and] traveling in, through, or approaching other hazards that exist due to pedestrians, other traffic, weather, or highway conditions," *see id.* § 41-6a-601(1)(a), (e), he would have had time to bring his vehicle to a stop or take other evasive maneuvers instead of continuing with his turn. Even Cope's own expert stated that Cope "could have slowed down" to "give himself more time to account for" all the "conditions and . . . obstructions" that impeded his ability to see pedestrians at the intersection.[4] But Cope never slowed down enough to give himself time to evaluate the situation. As a result,

---

4. Cope's expert went on to qualify his statement that Cope could have slowed down by saying, "[B]ut there was really no reason for him to slow down more than he already had." This qualification appears to be based on the faulty premise that Cope had no reason to slow because he did not see the boys. But this is the very reason that Cope, had he been exercising reasonable care, should have slowed down, namely, to give him time to verify the crossing was free of pedestrians and that he could make the turn safely.

he never saw the boys standing at the corner, even though, had he been exercising reasonable care, he should have. After all, other drivers at the intersection saw them. Indeed, Cope should have been alerted to the possibility that pedestrians might be intending to cross the adjacent street the moment his traffic signal turned green. Instead of letting his foot off the brake as he was making his intended right turn, a reasonable driver would have continued to slow and scanned the corner to verify that no pedestrians were waiting to cross, especially since the "Walk" signal had been illuminated. *See id.* § 41-6a-306(1) (stating that a pedestrian with a "Walk" symbol "has the right-of-way and may proceed across the roadway"). So, while it may be true, as Cope argues, that the accident was unavoidable because Cope did not see Michael, this argument is based on the false premise that Cope *could not have seen* Michael waiting on the corner. And the evidence is undisputable that if Cope had driven his vehicle at a speed that was reasonable and prudent under the circumstances, he would have seen the several clues (e.g., the boys at the corner and the illuminated "Walk" symbol) counseling against making an unsafe right-hand turn, *see id.* § 41-6a-804(1)(a)(i) (stating that a driver "may not turn a vehicle" until "the movement can be made with reasonable safety"), thus avoiding the accident. Instead, Cope would have brought his vehicle to a stop, allowed the boys to cross, and this tragedy could have been avoided altogether.

¶30 As our precedent indicates, when clear evidence demonstrates that the hazard was visible with enough time to prevent an accident, the question of negligence can be appropriately resolved by a court. In cases like this one, where the facts are undisputed, our supreme court has routinely concluded that a driver was negligent, as a matter of law, for not seeing what was to be seen—either because the driver was not keeping a proper lookout or because the driver was not paying attention. *See Phillips v. Tooele City Corp.*, 500 P.2d 669, 672 (Utah 1972) ("The failure of [the driver] to keep a proper lookout and to heed what was there to be observed constituted contributory negligence as a matter of law."); *Benson v. Denver & Rio Grande W. R.R. Co.*, 286

P.2d 790, 794 (Utah 1952) ("We believe that all reasonable [people] would agree that if [the] plaintiff had looked he could have [seen] the approaching train in time to stop and avoid the collision, *unless he was traveling too fast under the existing conditions to do so.*"); *Compton v. Ogden Union Ry. & Depot Co.*, 235 P.2d 515, 517 (Utah 1951) ("If [the driver] had looked at any time, . . . she must necessarily have seen the train approaching. She was, therefore, either negligent in failing to look or in failing to heed the train if she saw it."); *Gren v. Norton*, 213 P.2d 356, 359–60 (Utah 1949) ("There is no reason why, during this whole period, the truck could not have been observed by [the driver] had he been keeping any lookout. . . . [O]ur conclusion [is] that [the driver,] in failing to keep a proper lookout[,] was guilty of contributory negligence as a matter of law."); *Conklin v. Walsh*, 193 P.2d 437, 440 (Utah 1948) ("The driver having failed to see [the approaching] automobile until too late to avoid the collision, we see no escape from the conclusion that he did not keep a proper lookout and was guilty of negligence in that omission.").[5]

---

5. This issue used to be reviewed far more frequently in the context of contributory negligence, where if the plaintiff was even the slightest bit negligent—even 1%—there was no basis for a claim. But that scheme no longer pertains under the Liability Reform Act, *see* Utah Code §§ 78B-5-817 to -823, and the advent of the doctrine of comparative fault, *see State v. Grant*, 2021 UT App 104, ¶ 30, 499 P.3d 176 ("The Liability Reform Act delineates the apportionment of comparative fault in civil actions. . . . This scheme allows an injured party to recover damages from any defendant whose fault exceeds his own. And the amount an injured party may recover is proportionate to the percentage of fault attributed to the defendant." (cleaned up)). But the Liability Reform Act doesn't change the reality that courts can determine, under the right circumstances, the complete absence of negligence or the existence of at least some measure of negligence—even if it's small.

¶31   Here, Cope was "negligent as a matter of law" because he could have "either observed, or in the exercise of due care should have observed," the presence of the boys waiting to cross the street and "clearly could by ordinary reasonable care have avoided the collision" that resulted in Michael's death. *See Martin v. Stevens*, 243 P.2d 747, 751 (Utah 1952); *see also Charvoz*, 361 P.2d at 519 ("[T]he duty of a driver to yield the right of way arises [when] . . . he is either aware of the presence of a pedestrian within the crosswalk or should have, in the exercise of reasonable care, become aware of the pedestrian's presence in time to yield the right of way."). The undisputed evidence established that Cope failed to exercise reasonable care when he proceeded into the intersection and struck Michael without first ensuring that the turn could be made safely. We find no error in the district court's reasoning by which it reached the same determination on this point, namely that "the evidence wholly contradict[ed] the verdict" and that "[n]o facts adduced at trial support[ed] the verdict the jury reached." The district court correctly concluded that the undisputed evidence showed that Cope did not visually confirm that he could make the turn safely; that he was driving too fast to account for all actual and potential hazards, including those caused by his own vehicle; that he did not yield to Michael, who had the presumed right of way in a crosswalk with a "Walk" signal; that he did not maintain a proper lookout or see what was there to be seen; and that he did not exercise the reasonable care he was duty-bound to exercise. Instead of slowing down to verify that the coast was clear, Cope decided to make the turn quickly after the light turned green, even though it had changed 5.5 seconds before the accident. While he took the time to maintain his speed and stay in his lane, Cope—as the district court observed—failed to fulfill his more important duty of care: looking for the illuminated "Walk" signal and pedestrians on the corner, both of which were there to be seen. Given all this, the district court correctly concluded that the jury's verdict contradicted the evidence. We see no error in the district court's determination that judgment as a matter of law was appropriate because the jury's verdict could "only be supported by the

mistaken beliefs that Cope could acquire the right of way by driving in a way that made him an immediate hazard to Michael and that a vehicle's blind spots can constitute a non-negligent excuse for failing to see what is there to be seen." We thus agree with the district court that such a "verdict is unsupported by the facts and misapplies the law."

¶32 Moreover, the two surveillance videos—which the district court referred to only tangentially, but which are part of the record on appeal—strike us as compelling evidence that Cope violated his duty of care. Both videos clearly show Michael moving about on the corner after he had pressed the button while he was waiting for the "Walk" signal to illuminate. The videos show Michael pause momentarily at the curbside before he continues into the crosswalk. Both videos make it abundantly clear that Cope would have seen Michael in the crosswalk if he had fulfilled his duty of care and slowed down to make a safe turn—as a reasonable driver would when approaching an intersection with a crosswalk to make a right-hand turn immediately after the light had changed. *See* Utah Code § 41-6a-804(1)(a)(i) (stating that a driver "may not turn a vehicle . . . until . . . the movement can be made with reasonable safety").

¶33 Based on the above considerations, we conclude, as a matter of law, that Cope breached his duty of care by approaching the intersection and crosswalk at an unsafe speed given the conditions. His speed did not allow him the time to notice and react to Michael's presence. He turned before it was safe to do so—a reasonable driver would have anticipated that a pedestrian would have a "Walk" signal at the same time as a green traffic signal. Yet Cope did not take heed of this caution, and so he failed to fulfill the responsibilities of a reasonable and prudent driver. Accordingly, the district court did not err in granting the Parents' renewed motion for judgment as a matter of law.

CONCLUSION

¶34    Having concluded that based on the evidence presented at trial Cope operated his vehicle in a negligent manner, at least to some degree, we perceive no error in the district court's grant of the Parents' motion for judgment as a matter of law.

¶35    Affirmed.

———————